UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TIMBISHA SHOSHONE TRIBE,                    No. 2:11-cv-00995-MCE-DAD
et al.,

      Plaintiffs,

   v.                                    <u>MEMORANDUM AND ORDER</u>

UNITED STATES DEPARTMENT OF
THE INTERIOR; et al.,

      Defendants.

----oo0oo----

Plaintiffs, Timbisha Shoshone Tribe ("Tribe"), Joseph "Joe" Kennedy, Angela "Angie" Boland, Grace Goad, Erick Mason, Hillary Frank, Madeline Esteves and Pauline Esteves filed this action on April 13, 2011, seeking declaratory and injunctive relief against Defendants United States Department of the Interior ("DOI"), Bureau of Indian Affairs ("BIA"), Larry Echo Hawk ("Echo Hawk"), Assistant Secretary of the Interior for Indian Affairs, Amy Dutschke, Director of the Pacific Regional Office of the BIA, and Troy Burdick ("Burdick"), Superintendent of the Central California Agency of the BIA, alleging injuries suffered as a result of a final agency decision issued by Echo Hawk on March 1, 2011 ("EHD").

Presently before the Court is Plaintiffs' Motion for Preliminary Injunction ("Motion") which came on for hearing before the Court on shortened time on May 12, 2011, at 2:00 p.m.  For the following reasons, Plaintiffs' Motion is DENIED.

## BACKGROUND[1]

**A.   Tribal History**

In 1983, the Tribe was formally recognized by the DOI as a sovereign Indian nation with whom the United States would maintain government-to-government relations.  The Tribe is organized under a written Constitution that establishes the General Council as the Tribe's supreme governing body.  The General Council has delegated some of its powers to a five-member Tribal Council.

The Tribe's Constitution limits tribal membership to persons "listed on the genealogy role prepared as of March 1978" and to certain of those members' lineal descendants.  The Constitution and the Tribe's "Enrollment Ordinance" require that the Tribal Council "revoke membership status from any individual whom the enrollment committee has determined was erroneously, fraudulently or otherwise incorrectly enrolled."

///
///
///
///

---

[1] Unless otherwise noted, the following facts are taken, at times verbatim, from Plaintiffs' Complaint.

General elections for the Tribal Council are held every November, and members serve two-year, staggered terms.  The Tribe's Constitution requires that these elections be certified by an Election Board, the actions of which are governed by the Tribe's "Election Ordinance."

**B.    The Tribe's Leadership Dispute**

The current lawsuit is the culmination of a long-standing dispute over the election and composition of the Tribe's proper Tribal Council.  While it is undisputed that in 2006 the Tribal Council consisted of Chairman Joe Kennedy ("Kennedy"), Vice Chair Ed Beaman ("Beaman"), Secretary-Treasurer Madeline Esteves, and Council Members Virginia Beck ("Beck") and Cleveland Casey ("Casey") ("2006 Council"), since then multiple dueling factions have claimed to lead the Tribe.

The current fracture in the Tribe's governance began on August 25, 2007, when, at a Tribal Council meeting held by the 2006 Council, charges were brought against Beaman and Beck seeking their removal from office.  Beaman, Beck and Casey left the meeting, though Casey returned at some point before eventually leaving once again.  The remaining members of the 2006 Council determined Beaman and Beck had resigned, and they purportedly replaced Beck with another Tribe member (hereafter this group is referred to as the "2006 Kennedy Faction").  Beaman, Beck, and Casey (the "Beaman Faction") subsequently met separately and passed resolutions also purporting to take control of the Tribe's administration.

3

1    In November of 2007, both the 2006 Kennedy Faction and the
2 Beaman Faction held general elections that resulted in the
3 election of the "2007 Kennedy Council" and the "Beaman Council."
4 On December 14, 2007, Burdick issued a decision declining to
5 recognize the results of either election.

6    Kennedy subsequently called a General Council meeting, which
7 was convened on January 20, 2008.  Satisfied a quorum existed,
8 the General Council adopted several resolutions purporting to
9 ratify, as relevant here: 1)the general election resulting in
10 election of the 2007 Kennedy Council; 2) the actions taken by the
11 Tribal Council from August 25, 2007 onward; and 3) interpretation
12 of the term "resign" in the Timbisha Constitution.

13    On February 29, 2008, Burdick rescinded his December 14,
14 2007 decision and purported to recognize the 2007 Kennedy
15 Council.  The Beaman Council appealed that decision, staying its
16 effect.

17    During September and October of 2008, the 2007 Kennedy
18 Council Enrollment Committee performed a review of the Tribe's
19 membership rolls and determined seventy-four (74) people did not
20 qualify for membership in the Tribe.  The Enrollment Committee
21 notified those members they were to be disenrolled and, when the
22 time to appeal expired, the Tribal Council adopted resolutions
23 confirming the membership revocations.

24    During this same timeframe, in September 2008, George
25 Gholson ("Gholson"), a member of the Tribe purportedly
26 disenrolled pursuant to the above 2007 Kennedy Council efforts,
27 convened another General Council meeting.
28 ///

At this meeting, Gholson allegedly recalled Kennedy and replaced him with both Gholson and another disenrolled individual.  On October 17, 2008, based on the actions taken at that General Council meeting, Burdick issued a decision recognizing Gholson as the Chairman of the Tribe.  Though Burdick's decision was not yet effective, Gholson allegedly used it to justify the removal of Tribal assets from the Tribal Office on the Death Valley reservation.

Just a few weeks later, on November 10, 2008, Burdick issued another decision recognizing the 2006 Council.

The following day, the 2007 Kennedy Council Tribal Election Board conducted a general election, resulting in the election of the "2008 Kennedy Council."  No other election was held at this time.

On December 4, 2008, Defendant Dutschke's predecessor, Regional Director Dale Morris ("Morris") nonetheless recognized Gholson as the Tribe's chairman.  A few days later, on December 12, 2008, Gholson again allegedly removed Tribal property from the Tribal Office in Death Valley.

On December 22, 2008, Morris rescinded his December 4, 2008, decision recognizing Gholson.  Gholson nevertheless refused to return any Tribal property.

On February 17, 2009, Morris reversed Burdick's decision recognizing the 2007 Kennedy Council, and, on March 24, 2009, he reversed Burdick's October 17, 2008 decision recognizing Gholson, proposing in both decisions to recognize the 2006 Tribal Council.

///

///

1    The 2008 Kennedy Council appealed Morris's February 17
2  decision, and Gholson, among others, appealed his March 24
3  decision.  These two groups will hereafter be referred to as the
4  "Kennedy Faction" and the "Gholson Faction."  Echo Hawk took
5  jurisdiction over and consolidated these appeals.

6    In November of both 2009 and 2010, the Kennedy Faction and
7  the Gholson Faction each purportedly held general elections
8  resulting in the election of what will be referred to as the
9  "current Kennedy Council" and the "Gholson Council."  According
10 to Plaintiffs, the Gholson Faction permitted disenrolled members
11 to vote in its elections and to elect to its council disenrolled
12 members or individuals who did not qualify for membership.

13    The Gholson Faction eventually withdrew its appeal of the
14 March 24, 2009 decision, but nonetheless continued to work to
15 freeze Tribe bank accounts.

16    On February 24, 2010, Burdick issued a decision determining
17 no Tribal Council existed. The Kennedy Faction appealed the
18 decision, and the BIA has not yet acted on that appeal.

19    Plaintiffs allege Gholson used Burdick's latest decision to
20 again freeze Tribal funds and to convince federal agencies to
21 cease funding of various of the Tribe's services.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1    **C.    Echo Hawk's Decision On The Pending Appeal**

2

3    On March 1, 2011, Echo Hawk issued a decision on the 2008

4    Kennedy Council appeal, first denying the appeal and, second,

5    recognizing, "for the limited purpose of carrying out essential

6    government-to-government relations and holding a special election

7    that complies with the tribal law," the Gholson Council.   EHD,

8    p. 10.   Echo Hawk justified his decision for two reasons: 1) more

9    votes were cast in the Gholson-conducted election, supporting the

10   conclusion it would be less intrusive to vest temporary

11   recognition in that council; and 2) despite Kennedy's belief that

12   numerous members voting in the Gholson-conducted elections had

13   been disenrolled, because those disenrollments had been rejected

14   by the DOI on procedural grounds, any election barring those

15   members from voting was facially invalid.

16

17   **D.    The Current Litigation**

18

19   Six weeks after issuance of the EHD, Plaintiffs, both as

20   individuals and as members of the current Kennedy Council, which

21   is purportedly empowered to act on behalf of the Tribe, filed

22   their Complaint in this action arguing that the EHD was arbitrary

23   and capricious because Echo Hawk: 1) improperly considered

24   evidence outside of the Administrative Record in deciding the

25   appeal; 2) misapplied Tribal enrollment law; 3) misapplied Tribal

26   Election law; and 4) relied on irrelevant factors and ignored

27   relevant factors.   Plaintiffs also contend the EHD was issued in

28   violation of Defendants' federal trust responsibilities.

1    Plaintiffs subsequently filed the instant Motion arguing a
2  preliminary injunction should issue because the EHD "did not
3  consider tribal membership or the qualifications of candidates or
4  voters as at all relevant; based its conclusions and reasoning on
5  facts not in the record, including vote totals using very
6  different qualifications for voting in to elections held by two
7  rival factions; authorized the replacement tribal government to
8  conduct a new election...even though the EHD also denied the
9  validity of the election that is the sole claim to legitimacy for
10 the replacement tribal government; and offered no sensible or
11 reasonable basis for replacing the tribal government or
12 authorizing the replacement government to conduct a new
13 election."  Motion, 1:8-14.  Plaintiffs specifically seek an
14 order enjoining Defendants from: "(1) assisting in the conduct,
15 or recognizing the results of, the imminent purported special
16 election administered by the Gholson faction in which persons who
17 do not meet the criteria for membership in the Tribe are
18 permitted to vote or run for office; (2) further recognition or
19 assistance to the replacement tribal government; and (3) failing
20 to recognize and assist legitimate Tribal Council led by
21 plaintiff Tribal Council members."  Id., 1:19-2:3.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**STANDARD**

A preliminary injunction is an extraordinary remedy never awarded as of right, and Plaintiffs have the burden of proving an injunction should issue. <u>Winter v. Nat'l Res. Def. Council, Inc.</u>, 555 U.S. 7, 129 S. Ct. 365, 376 (2008); see <u>Granny Goose Foods, Inc. v. Teamsters</u>, 415 U.S. 423, 442-43 (1974). As such, the Court may only grant such an injunction "upon a clear showing that the plaintiff is entitled to such relief." <u>Winter</u> at 375-76 (citing <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (per curiam)). To prevail, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>Id.</u> at 374. Alternatively, under the so-called sliding scale approach, as long as the Plaintiffs demonstrate the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in Plaintiffs' favor. <u>Alliance for Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (finding that sliding scale test for issuance of preliminary injunctive relief remains viable after <u>Winter</u>).

///

///

///

///

**ANALYSIS**

Plaintiffs have not met their burden of proving they are likely to succeed on the merits of their claims, or that the Court can even reach the merits of these claims, because they have failed to make the requisite showing that: 1) the Tribe is a proper party-plaintiff; 2) this Court has jurisdiction to determine whether Plaintiffs can properly represent the Tribe; 3) this action can proceed even if the Tribe is not joined as a party; or 4) this action can proceed despite the fact that the Gholson Faction is not a party.  Because Plaintiffs have failed to make even a threshold showing that they are likely to succeed on the merits, Plaintiffs' instant Motion is denied.

**A.    Plaintiffs Have Failed To Show That The Tribe Is Properly Before The Court.**

Plaintiffs purport to bring the instant action on behalf of the Tribe, arguing that "[t]he Kennedy Council has the authority to bring this suit as the duly elected Tribal Council of the Tribe, elected in the certified and unappealed elections of 2009, which BIA observed, and 2010." Reply, 4:12-14.  The first problem with this argument is that it assumes the correctness of the very question at issue in this case, namely, that the Kennedy Council is the Tribe's properly enacted and functioning Tribal Council.  See Paramount Pictures Corp. v. Holden, 166 F. Supp. 684, 691 (S.D. Cal. 1958) ("An injunction pending suit should not issue where to do so will call for a decision of the fact ultimately involved in the lawsuit.").

10

1   While Plaintiffs believe they are the properly elected Council,

2   they would have to prove that fact to make a clear showing that

3   they are empowered to act on the Tribe's behalf in the first

4   place.  Since the Gholson Council is currently recognized by the

5   BIA for government-to-government purposes, however, Plaintiffs

6   have not shown that the Tribe is properly before the Court.

7   Timbisha Shoshone Tribe v. Bureau of Indian Affairs, 2003 WL

8   25897083, *3 (E.D. Cal.) ("Timbisha 2003") (holding that since

9   the tribal council recognized by the BIA had not authorized

10  filing of the suit, the tribe was not a proper party-plaintiff).

11

12      **B.   Plaintiffs Have Failed To Show That This Court Has
             Jurisdiction To Determine Whether Plaintiffs Can**
13           **Properly Represent The Tribe.**

14

15      Moreover, Plaintiffs have failed to make a clear showing

16  that this Court even has jurisdiction to reach the question of

17  whether Plaintiffs can properly represent the Tribe.  Defendants

18  contend that Plaintiffs' claims present "election disputes

19  between competing tribal councils" that constitute

20  "nonjusticiable, intertribal matters."  Opposition, 17:10-13.

21  Plaintiffs nontheless argue that their "claims against defendants

22  do not require this Court to 'construe and apply tribal law,' and

23  plaintiffs have not requested that this Court grant injunctive

24  and declaratory relief based on tribal law."  Reply, 5:26-28.

25  According to Plaintiffs, they "seek only review of defendants'

26  reasoning in the EHD to determine whether it meets the

27  requirements of the APA."  Id., 6:1-2.

28  ///

1    Plaintiffs' argument ignores the fact that for this Court to
2  reach the merits of Plaintiffs' claims it would have to resolve
3  the parties' disenrollment and election disputes because the only
4  way to determine whether the Tribe is properly joined as a
5  plaintiff is to determine whether the individual Plaintiffs have
6  the authority under Tribal law to bring this action on the
7  Tribe's behalf.

8    This case is thus similar to <u>Sac & Fox Tribe of the</u>
9  <u>Mississippi in Iowa v. Bureau of Indian Affairs</u>, 439 F.3d 832
10 (8th Cir. 2006).  In <u>Sac & Fox Tribe</u>, two tribal councils claimed
11 authority to govern that tribe.  An election board operating
12 under one of the councils filed suit against the BIA seeking,
13 among other things, judicial review of the BIA's decision to
14 recognize the competing council.  <u>Id.</u> at 834.  "The district
15 court concluded that it would necessarily have to recognize the
16 [plaintiff] Election Board as the proper plaintiff to reach the
17 merits of the case" and thus dismissed the action for lack of
18 subject matter jurisdiction.  <u>Id.</u> at 834-35.

19   The Eighth Circuit affirmed stating, "[i]n cases involving
20 tribal affairs, we exercise section 1331 jurisdiction only when
21 federal law is determinative of the issues involved.
22 'Jurisdiction to resolve internal tribal disputes [and] interpret
23 tribal constitutions and laws...lies with Indian tribes and not
24 in the district courts.'  We have characterized election disputes
25 between competing tribal councils as nonjusticiable, intratribal
26 matters."  <u>Id.</u> at 835 (internal citations and quotations
27 omitted).
28 ///

12

1   That court went on to reason that "[t]o reach the merits of this
2   case, the district court would necessarily have to construe and
3   apply tribal law to determine whether an election board has
4   authority to file suit on behalf of the Tribe.  The district
5   court would then have to determine which election board is the
6   proper plaintiff."  Id.

7        The same is true here.  In order to determine if the Tribe
8   is properly before the Court, the Court would have to determine
9   whether Plaintiffs are entitled to sue on the Tribe's behalf.
10  This determination would require the Court to resolve the
11  parties' enrollment and election disputes, and, under Sac & Fox
12  Tribe, the Court lacks jurisdiction to do so.

13       The above analysis is further supported by another decision
14  from this Court arising out of an earlier dispute between two
15  rival factions of this same Tribe.  Timbisha Shoshone Tribe v.
16  Kennedy, 687 F. Supp. 2d 1171 (2009) ("Timbisha 2009").  In
17  Timbishia 2009, when evaluating those plaintiffs' motion for
18  preliminary injunction, this Court determined that "[i]nternal
19  matters of a tribe are generally reserved for resolution by the
20  tribe itself, through a policy of Indian self-determination and
21  self-government as mandated by the Indian Civil Rights Act.
22  Unless surrendered by the tribe, or abrogated by congress, tribes
23  possess an inherent and exclusive power of matters of internal
24  tribal governance.  Moreover, a tribe's right to define its own
25  membership for tribal purposes has long been recognized as
26  central to its existence as an independent political community."
27  Id. at 1185 (internal citations and quotations omitted).
28  ///

13

1   The defendant faction members in that case argued the
2   plaintiff faction members lacked standing because they had been
3   disenrolled from the Tribe.  The Timbisha 2009 Court stated,
4   "[W]ithout authority, this Court will not interfere in the
5   internal affairs of the Tribe." Id. at 1185.  The Court
6   reasoned, "[n]either party points to a provision of the Tribe's
7   Constitution, a Congressional Act, or other controlling authority
8   to allow this Court to resolve the issue of disenrollment....
9   [R]esolution of the disenrollment issue turns on the parties'
10  election dispute.  These issues are central to Indian self-
11  determination and self-government." Id.  The Court held it was
12  unable to determine whether Plaintiffs had standing without
13  resolving the legitimacy of the disenrollment and, derivatively,
14  resolving the election dispute. Id.  Accordingly, because the
15  Court could not reach the standing issue without interfering with
16  tribal affairs, it determined Plaintiffs failed to meet their
17  burden of showing that they were likely to succeed on the merits.
18  Id.
19      As in Timbisha 2009, for this Court to determine whether
20  Plaintiffs here have properly filed suit on behalf of the Tribe,
21  it would have to entertain the merits of the parties' election
22  and disenrollment issues.  Because neither party has pointed to
23  any authority permitting this Court to interfere in these
24  conflicts, the Court will not do so.  Accordingly, Plaintiffs
25  have failed to make a clear showing that this Court has
26  jurisdiction to evaluate whether Plaintiffs can represent the
27  Tribe.
28  ///

14

1      **C.   Plaintiffs Have Failed To Show That This Action Can
              Proceed If The Tribe Is Not A Party.**
2

3           Plaintiffs have likewise failed to make a clear showing

4   that, if they cannot represent the Tribe or if this Court lacks

5   the jurisdiction to make that determination, this action can

6   proceed in the Tribe's absence.  Pursuant to Federal Rule of

7   Civil Procedure 19(a)(1): "A person who is subject to service of

8   process and whose joinder will not deprive the court of subject-

9   matter jurisdiction must be joined as a party if: (A) in that

10  person's absence, the court cannot accord complete relief among

11  existing parties; or (B) that person claims an interest relating

12  to the subject of the action and is so situated that disposing of

13  the action in the person's absence may: (i) as a practical matter

14  impair or impede the person's ability to protect the interest; or

15  (ii) leave an existing party subject to a substantial risk of

16  incurring double, multiple, or otherwise inconsistent obligations

17  because of the interest."  "If a person who is required to be

18  joined if feasible cannot be joined, the court must determine

19  whether, in equity and good conscience, the action should proceed

20  among the existing parties or should be dismissed."  Fed. R. Civ.

21  Proc. 19(b).

22          "[T]here is no precise formula for determining
            whether a particular non-party is necessary to an
23          action.  In determining whether a party is necessary,
            the court must consider whether complete relief is
24          possible among those parties already present in the
            action and whether the absent party has a claim to a
25          legally protected interest in the outcome of the
            action.  A party is necessary if either one of these
26          factors is present."

27  Timbisha 2003, 2003 WL 25897083, *5 (internal citations and

28  quotations omitted).

                                    15

1    In <u>Timbisha 2003</u>, two rival factions of this same Tribe again
2  disputed which faction should properly govern.  While various
3  decisions were on appeal before the BIA, the BIA had recognized
4  one faction as the interim tribal council.  <u>Id.</u> at *2.
5  Plaintiffs, the non-recognized council, filed suit against the BIA
6  and members of the rival faction in this Court. After determining
7  the Tribe was not a proper party-plaintiff, the Court went on to
8  hold that both the tribe and the rival faction (<u>i.e.</u>, the faction
9  currently recognized by the BIA) were necessary parties.  The
10 Court reasoned that the Tribe was a necessary party since it
11 "ha[d] an interest in the outcome of the suit" and the parties'
12 dispute "raise[d] questions about compliance with the Tribe's
13 Constitution and Election Ordinance, questions in which the Tribe
14 as a whole has an interest." Id. at *5. Indeed, "[t]he governance
15 of the Tribe [was] at stake in [that] dispute, and the Tribe ha[d]
16 an interest in any such change in its governing body."  <u>Id.</u>

17    For the same reasons here, the Tribe is again likely a
18 necessary party.  The Tribe as a whole has an interest in this
19 current suit because the dispute between the Kennedy and Gholson
20 Factions raises questions about compliance with the Tribe's
21 Constitution, Election Ordinance and Membership Ordinance and
22 because the governance of the Tribe is once again at stake.  In
23 fact, by attempting to join the Tribe as a Plaintiff in the first
24 place, Plaintiffs tacitly admit the Tribe is a necessary party to
25 this action.  Since Plaintiffs have failed to put forth any
26 meaningful argument to the contrary, Plaintiffs have failed to
27 make a clear showing that this litigation can proceed in the
28 Tribe's absence.

16

1    **D.    Plaintiffs Have Failed To Show That This Action Can
        Proceed Even Though The Gholson Council Is Not A Party.**

2

3        The Gholson Council is also likely a necessary party, and

4    Plaintiffs have not shown otherwise.  In <u>Timbisha 2003</u>, this

5    Court held that the faction then recognized by the BIA as the

6    acting Tribal Council had "an interest in the outcome of the suit

7    because it [was] the Tribe's interim governing body, and its

8    status would be changed should plaintiffs succeed."  2003 WL

9    25897083, *5.  The same is again true here.  In addition in this

10   case, Plaintiffs vehemently attack the membership status of a

11   number of members of the Gholson Council as well as those

12   individuals who voted for that Council.  Plaintiffs likewise

13   point to the Gholson Council as the cause of the majority of the

14   injuries suffered by the Tribe.  As such, the case for joining

15   the Gholson Council is even stronger here than in <u>Timbisha 2003</u>,

16   and Plaintiffs have again failed to make a contrary showing.

17       Accordingly, because Plaintiffs have failed to make the

18   requisite showing that they are entitled to bring this action on

19   behalf of the Tribe, that this Court even has the jurisdiction to

20   determine whether they can represent the Tribe, or that this case

21   can proceed absent joinder of the Tribe or the Gholson Council,[2]

22   Plaintiffs have failed to carry their burden to show that this

23   Court can reach the merits of their claims, let alone adjudicate

24   those claims in Plaintiffs' favor.

25

26   ────────────

27       [2] In <u>Timbisha 2003</u>, the Court went on to determine that both
     the Tribe and the faction recognized by the BIA were
28   indispensable parties.  There is simply not enough information
     before the Court to delve into a similar inquiry at this time.

17

**CONCLUSION**

    Accordingly, for the reasons just stated, Plaintiffs' Motion for Preliminary Injunction (ECF No. 11) is DENIED.

    IT IS SO ORDERED.

Dated: May 16, 2011

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE