UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOSEPH ("JOE") KENNEDY,          No. 2:11-cv-00995-MCE-DAD
et al.,

     Plaintiffs,

    v.                           <u>MEMORANDUM AND ORDER</u>

UNITED STATES DEPARTMENT OF
THE INTERIOR; et al.,

     Defendants.

----oo0oo----

The Timbisha Shoshone Tribe ("Tribe"), Joseph "Joe" Kennedy,
Angela "Angie" Boland, Grace Goad, Erick Mason, Hillary Frank,
Madeline Esteves and Pauline Esteves filed this action on
April 13, 2011, seeking declaratory and injunctive relief against
Defendants United States Department of the Interior ("DOI"),
Bureau of Indian Affairs ("BIA"), Larry Echo Hawk ("Echo Hawk"),
Assistant Secretary of the Interior for Indian Affairs, Amy
Dutschke ("Dutschke"), Director of the Pacific Regional Office of
the BIA, and Troy Burdick ("Burdick"), Superintendent of the
Central California Agency of the BIA (collectively,
"Defendants"), alleging injuries suffered as a result of a final
agency decision issued by Echo Hawk on March 1, 2011 ("EHD I").

On August 5, 2011, all of the original Plaintiffs other than the Tribe (hereafter collectively "Plaintiffs") filed a First Amended Complaint ("FAC") attacking both EHD I and a subsequent related decision issued by Echo Hawk on July 29, 2011 ("EHD II") (collectively with EHD I referred to as the "EHD").  Presently before the Court is Defendants' Motion to Dismiss the FAC.  For the following reasons, Defendants' Motion is GRANTED with leave to amend for failure to join indispensable parties.[1]

## BACKGROUND[2]

### A.   Tribal History.

In 1982, the Tribe was formally recognized by the DOI as a sovereign Indian nation with whom the United States would maintain government-to-government relations.  The Tribe is organized under a written Constitution that establishes the General Council as the Tribe's supreme governing body. The General Council has delegated some of its powers to a five-member Tribal Council.

---

[1] This Court determined oral argument will not be of material assistance and thus decides this case on the briefing. See E.D. Cal. Local Rule 230(g).  Plaintiffs' Request for Oral Argument (ECF No. 57) is thus DENIED.

[2] Unless otherwise noted, the following facts are taken, sometimes verbatim, from Plaintiffs' FAC.  "Because the question whether a party is indispensable 'can only be determined in the context of particular litigation,' it is necessary to set forth in some detail the legal and factual context of the present controversy." American Greyhound Racing, Inc. v. Hull, 305 F.3d 1015, 1018 (9th Cir. 2002) (quoting Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102 (1968)).

1    The Tribe's Constitution limits tribal membership to persons
2    listed on the 1978 Base Roll and to certain of those members'
3    lineal descendants.  The Constitution requires that the Tribal
4    Enrollment Committee "revoke membership status from any
5    individual whom the enrollment committee has determined was
6    erroneously, fraudulently or otherwise incorrectly enrolled."

7    General elections for the Tribal Council are held every
8    November, and members serve two-year, staggered terms.  The
9    Tribe's Constitution requires that these elections be certified
10   by an Election Board, the actions of which are governed by the
11   Tribe's "Election Ordinance."  Because members of this Election
12   Board may only be removed for specific, non-political reasons,
13   the Board generally remains unchanged from year to year.

15   **B.   The Tribe's Leadership Dispute.**

17   The current lawsuit is the culmination of a long-standing
18   dispute over the election and composition of the Tribe's proper
19   Tribal Council.  While it is undisputed that in 2006 the Tribal
20   Council consisted of Joe Kennedy ("Kennedy"), who was elected as
21   Chairman, Ed Beaman ("Beaman"), Madeline Esteves, Virginia Beck
22   ("Beck") and Cleveland Casey ("Casey") ("2006 Council"), since
23   then multiple dueling factions have claimed to lead the Tribe.

24   The current fracture in the Tribe's governance began on
25   August 25, 2007, when, at a Tribal Council meeting held by the
26   2006 Council, charges were brought against Beaman and Beck
27   seeking their removal from office.
28   ///

Beaman, Beck and Casey left the meeting, though Casey returned at some point before eventually leaving once again.  The remaining members of the 2006 Council determined Beaman and Beck had resigned, and they purportedly replaced Beck with another Tribe member (hereafter this group is referred to as the "2006 Kennedy Faction"), while Beaman's seat was left to be filled at the next election.  Beaman, Beck, and Casey (the "Beaman Faction") subsequently met separately and passed resolutions also purporting to take control of the Tribe's administration.

In November of 2007, both the 2006 Kennedy Faction and the Beaman Faction held general elections that resulted in the election of the "2007 Kennedy Council" and the "Beaman Council." On December 14, 2007, Burdick issued a decision declining to recognize the results of either election.

The 2007 Kennedy Council subsequently called a General Council meeting, which was convened on January 20, 2008. Satisfied a quorum existed, the General Council adopted several resolutions purporting to ratify, as is relevant here, the general election resulting in election of the 2007 Kennedy Council and the 2006 Kennedy Faction's interpretation of the term "resign" in the Timbisha Constitution.

On February 29, 2008, Burdick rescinded his December 14, 2007, decision and purported to recognize the 2007 Kennedy Council.  The Beaman Council appealed that decision ("Beaman Appeal"), staying its effect.

///

///

///

4

On September 25, 2008, the 2007 Kennedy Council Enrollment Committee performed a review of the Tribe's membership rolls and determined seventy-four (74) people did not qualify for membership in the Tribe.  The Enrollment Committee notified those members they were to be disenrolled and, when the time to appeal expired, the 2007 Kennedy Council performed the ministerial act of adopting resolutions confirming the membership revocations.

During this same time frame, in September 2008, George Gholson ("Gholson"), a member of the Tribe purportedly disenrolled pursuant to the above 2007 Kennedy Council efforts, convened another General Council meeting.  At this meeting, Gholson allegedly recalled Kennedy and replaced him with both Gholson and another individual.  On October 17, 2008, based on the actions taken at that General Council meeting, Burdick issued a decision recognizing Gholson as the Chairman of the Tribe. Though Burdick's decision was not yet effective, Gholson allegedly used it to justify the removal of Tribal assets from the Tribal Office on the Death Valley reservation.

Just a few weeks later, on November 10, 2008, Burdick issued another decision recognizing the 2006 Council.

The following day, the 2007 Kennedy Council Tribal Election Board conducted a general election, resulting in the election of the "2008 Kennedy Council."  No other election was held at this time.

///

///

///

///

1    On December 4, 2008, Defendant Dutschke's predecessor,

2 Regional Director Dale Morris ("Morris") nonetheless recognized

3 Gholson as the Tribe's chairman.  A few days later, on

4 December 12, 2008, Gholson again allegedly removed Tribal

5 property from the Tribal Office in Death Valley.

6    On December 22, 2008, Morris rescinded his December 4, 2008,

7 decision recognizing Gholson.  Gholson nevertheless refused to

8 return any Tribal property.

9    On February 17, 2009, Morris reversed Burdick's decision,

10 recognizing the 2007 Kennedy Council, and, on March 24, 2009, he

11 reversed Burdick's October 17, 2008 decision recognizing Gholson,

12 proposing in both decisions to recognize the 2006 Tribal Council.

13    The 2008 Kennedy Council appealed Morris's February 17

14 decision ("Kennedy Appeal"), and Gholson, among others, appealed

15 his March 24 decision.  These two groups will hereafter be

16 referred to as the "Kennedy Faction" and the "Gholson Faction."

17 Echo Hawk took jurisdiction over and consolidated these appeals.

18    In November of both 2009 and 2010, the Kennedy Faction and

19 the Gholson Faction each purportedly held general elections

20 resulting in the election of what will be referred to as the

21 "current Kennedy Council" and the "Gholson Council."  According

22 to Plaintiffs, the Gholson Faction permitted disenrolled members

23 to vote in its elections and to elect to its council disenrolled

24 members or individuals who did not qualify for membership.

25    The Gholson Faction eventually withdrew its appeal of the

26 March 24, 2009 decision, but nonetheless continued to work to

27 freeze Tribe bank accounts.

28 ///

On February 24, 2010, Burdick issued a decision determining no Tribal Council existed. The Kennedy Faction appealed the decision, and the BIA has not yet acted on that appeal.

Plaintiffs allege Burdick's latest decision was used to again freeze Tribal funds and to convince federal agencies to cease funding of various of the Tribe's services.

**C.   Echo Hawk's March 1, 2011, Decision.**

On March 1, 2011, Echo Hawk issued a decision on the Beaman and Kennedy Appeals, first affirming Morris's decision rejecting the validity of the resolutions purporting to give power to the 2007 Kennedy Council, EHD I, p. 11, and, second, recognizing, "for the limited purpose of carrying out essential government-to-government relations and holding a special election that complies with the tribal law," the Gholson Council, id., p. 10.  Echo Hawk provided two justifications for his latter decision: 1) more votes were cast in the Gholson-conducted election, supporting the conclusion it would be less intrusive to vest temporary recognition in that council; and 2) despite Kennedy's belief that numerous members voting in the Gholson-conducted elections had been disenrolled, because those disenrollments had been rejected by the DOI on procedural grounds, any election barring those members from voting was facially invalid.

///

///

///

///

1          **D.     Initiation of the Current Litigation.**

2

3          Six weeks after issuance of EHD I, Plaintiffs, both as

4    individuals and as members of the current Kennedy Council, which

5    was purportedly empowered to act on behalf of the Tribe, filed

6    their Complaint in this action arguing that EHD I was arbitrary

7    and capricious because Echo Hawk had: 1) improperly considered

8    evidence outside of the Administrative Record in deciding the

9    appeal; 2) misapplied Tribal enrollment law; 3) misapplied Tribal

10   Election law; and 4) relied on irrelevant factors and ignored

11   relevant factors in rendering his decision.  Plaintiffs also

12   argued EHD I was issued in violation of Defendants' federal trust

13   responsibilities.

14         Plaintiffs subsequently filed a Motion for a Preliminary

15   Injunction arguing that the EHD "did not consider tribal

16   membership or the qualifications of candidates or voters as at

17   all relevant; based its conclusions and reasoning on facts not in

18   the record, including vote totals using very different

19   qualifications for voting in two elections held by two rival

20   factions; authorized the replacement tribal government to conduct

21   a new election...even though the EHD also denied the validity of

22   the election that is the sole claim to legitimacy for the

23   replacement tribal government; and offered no sensible or

24   reasonable basis for replacing the tribal government or

25   authorizing the replacement government to conduct a new

26   election."  Motion for Preliminary Injunction, 1:8-14.

27   ///

28   ///

Plaintiffs thus sought an order enjoining Defendants from: "(1) assisting in the conduct, or recognizing the results of, the imminent purported special election administered by the Gholson faction in which persons who do not meet the criteria for membership in the Tribe are permitted to vote or run for office; (2) further recognition or assistance to the replacement tribal government; and (3) failing to recognize and assist legitimate Tribal Council led by plaintiff Tribal Council members." Id., 1:19-2:3. This Court denied Plaintiff's Motion via written order dated May 16, 2011.

**E.    The 2011 Election.**

In the meantime, in keeping with the mandates of EHD I's interim recognition, the Gholson Council conducted a Tribal Council election, by which the Tribe elected George Gholson as Chairperson, Bill Eddy as Vice-Chairperson, Margaret Cortez as Secretary-Treasurer, and Clyde Nichols and Earl Frank as Executive Members. Declaration of James Porter, ¶ 4, Exh. 3, p. 6. According to Plaintiffs, Gholson included them on the election ballot, but did not permit them to provide campaign statements to voters. Gholson also purportedly again permitted non-members to vote and prevented his opponents from challenging ballots or voters, examining or viewing the ballots, envelopes or serial numbers on the ballots and envelopes, examining any of the documentation after the election or utilizing any other means by which Plaintiffs could have verified the election results.
///

1    Without admitting the legitimacy of the election, over

2   twenty percent of the General Council appealed the election to

3   Gholson, alleging a number of infirmities in the electoral

4   process.  Gholson refused to provide documents requested by

5   Plaintiffs, but apparently scheduled a hearing and later rejected

6   their appeal.[3]  According to Plaintiffs, however, the DOI failed

7   to review their objections to the election prior to declaring

8   that Gholson had reasonably rejected their challenges.

9

10    **F.    Echo Hawk's July 29, 2011, Decision.**

11

12    On July 29, 2011, Echo Hawk issued another decision, EHD II,

13   in which he stated that Gholson's 2011 election complied with

14   tribal law and that Gholson had addressed the appeals before him

15   adequately.  Plaintiffs allege that EHD II impermissibly fails to

16   include any reasoning or legal basis for its conclusions as is

17   required by the APA and that it fails to acknowledge various

18   violations of Plaintiffs' free speech rights.  Plaintiffs also

19   aver they were denied any meaningful agency review by issuance of

20   EHD II because Echo Hawk made his decision immediately final for

21   the DOI.

22    In EHD II, Echo Hawk reasoned that the election, rather than

23   his decision in EHD I, "constituted the resolution of an internal

24   tribal dispute in a valid tribal forum." EHD II, p. 3.  He

25   further stated:

26

27    [3] Plaintiffs appear to take the position that Gholson did
    not properly deny or reject the appeal.  This issue is not
28   material to the Court's decision.

10

> The Timbisha Shoshone people embraced a tribal
> government by means of an election compliant with their
> Constitution.  The Federal Government may not ignore or
> reject the results of a tribal election that clearly
> states the will of a sovereign Indian nation.
> Therefore, the Department should recognize the Timbisha
> Shoshone Tribal government consisting of the five
> people identified in the Election Committee's report as
> having received the most votes in the April 29
> election.

Id.  Finally, Echo Hawk noted that his decision was justified by

the long-hiatus in government-to-government relations with the

Tribe, especially given the fact that the interim recognition of

the Gholson Council, which extended only one-hundred twenty (120)

days, had expired approximately one month prior, leaving the

Tribe with no recognized governing body.  Id., p. 4.


### G.   Plaintiffs' First Amended Complaint.


A few days after EHD II was issued, Plaintiffs filed their

FAC alleging that: 1) the EHD improperly recognized the Gholson

Faction based solely on information not made part of the

administrative record on appeal; 2) in issuing the EHD, DOI

failed to defer to the Tribe's own interpretations of tribal law

and entertained appeals that had not been exhausted via internal

tribal mechanisms; 3) DOI issued the EHD in contravention of

rules and federal common law that bar its interference in tribal

membership decisions; 4) the EHD impermissibly created a hiatus

in recognition of a tribal government since Echo Hawk determined

there was no existing government capable of recognition; and

5) in issuing the EHD, Defendants improperly relied on irrelevant

factors and ignored relevant factors.

By way of substantive relief, Plaintiffs now ask that this Court:
"(1) [d]eclare that the EHD violates the APA, because it is
arbitrary, capricious, and otherwise not in accordance with law,
violates the Plaintiffs' constitutional right to due process of
law, is in excess of DOI's statutory authorities, and fails to
comply with procedures required by law; (2) [e]njoin DOI, BIA,
and their officials from implementing the EHD; [and] (3) [r]emand
the EHD to DOI for further proceedings consistent with federal
law."  FAC, p. 49.  Defendants responded by filing the instant
Motion to Dismiss Plaintiffs' FAC in its entirety.  Defendants'
Motion is now GRANTED with leave to amend.

**ANALYSIS**

Defendants attack Plaintiffs' FAC on a number of fronts,
arguing that this Court lacks jurisdiction over the action for a
variety of reasons, that Plaintiffs failed to state a claim for
violation of departmental regulations or the Due Process Clause,
and that the Tribe and the 2011 Elected Council are required
parties that must either be joined or the case dismissed pursuant
to Federal Rule of Civil Procedure 19.[4]  The only argument this
Court need address is the latter one going to Plaintiffs' failure
to join necessary and indispensable parties.

///

///

///

_____

[4]  All further references to "Rule" or "Rules" are to the
Federal Rules of Civil Procedure unless otherwise noted.

12

Indeed, in its Order Denying Plaintiffs' Motion for Preliminary Injunction ("Order") this Court already held once that Plaintiffs failed to show the action could proceed on the original Complaint absent joinder of both the Tribe and the then-recognized Gholson Council.  Order, 15:1-17:16.  The FAC fares no better on this point, and, this issue being dispositive, Defendants' Motion is hereby GRANTED for failure to join both the Tribe and the 2011 Elected Council.[5]

**A.   Federal Rule of Civil Procedure 19.**

Pursuant to Rule 19(a)(1):

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

"If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).

///

///

---

[5] Though not explicitly stated in the papers, the Court construes this Motion as being brought pursuant to Rule 12(b)(7) which permits filing a motion to dismiss for "failure to join a party under Rule 19."

1    **B.    Whether the Tribe and the 2011 Elected Council are**
2    **Necessary Parties.**

3         "There is no precise formula for determining whether a

4    particular non-party is necessary to an action.  The

5    determination is heavily influenced by the facts and

6    circumstances of each case."  Confederated Tribes of Chehalis

7    Indian Reservation v. Lujan, 928 F.2d 1496, 1498 (9th Cir. 1991)

8    (internal citations and quotations omitted).  In conducting this

9    analysis, the Court must examine whether it can "award complete

10   relief to the parties present without joining the non-party" or,

11   alternatively, "whether the non-party has a 'legally protected

12   interest' in [the] action that would be 'impaired or impeded' by

13   adjudicating the case without it."  Paiute-Shoshone Indians of

14   the Bishop Cmty. of the Bishop Colony, Cal. v. City of

15   Los Angeles, 637 F.3d 993, 997 (9th Cir. 2011) (internal

16   quotations and citations omitted).  If the Court answers either

17   question in the affirmative, the absent party is a "required

18   party."  Id.  Given this formulation, the Court has no doubt that

19   both the Tribe and the 2011 Elected Council are necessary parties

20   to this litigation.

21        As this Court previously found, the Tribe has a legally

22   protected interest in the outcome of this case "because the

23   dispute between the [warring factions] raises questions about

24   compliance with the Tribe's Constitution, Election Ordinance and

25   Membership Ordinance and because the governance of the Tribe

26   is...at stake."

27   ///

28   ///

14

Order, 16:18-22; see also Timbisha Shoshone Tribe v. Bureau of Indian Affairs, 2003 WL 25897083, *5 (E.D. Cal.) ("[T]he Tribe has an interest in the outcome of the suit" because "[a]t bottom, this case is an internal dispute between two tribal factions" that "raises questions about compliance with the Tribe's Constitution and Election Ordinance, questions in which the Tribe as a whole has a clear interest," and because "[t]he governance of the Tribe is at stake..., and the Tribe has an interest in any...change in its governing body."). Indeed, as the Court previously observed, by joining the Tribe initially, Plaintiffs have already tacitly admitted the Tribe has a protected interest here. Order, 16:22-25. The current 2011 Elected Council likewise has a legally protected interest in this action because Plaintiffs pray for an order enjoining implementation of the EHD, which relief would divest the 2011 Elected Council of its status as the Tribe's recognized governing body. See Timbisha Shoshone, 2003 WL 25897083 at *5 (recognized tribal council "obviously ha[d] an interest in the outcome of the suit because it [was] the Tribe's interim governing body, and its status would be changed should plaintiffs succeed").

In addition, in making their arguments to this Court, Plaintiffs vehemently attack the membership status of at least some of the members of the currently elected council, as well as members of the interim Gholson Council, the precursor to the current government, and a number of other members (or former members, depending on your perspective) of the Tribe. Those purportedly disenrolled members have a legally protected interest in their Tribal membership, as does the Tribe itself.

15

1   See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 72 n.32 (1978)

2   ("A tribe's right to define its own membership for tribal

3   purposes has long been recognized as central to its existence as

4   an independent political community."); Timbisha Shoshone, 2003 WL

5   25897083 at *5.

6        The Court thus finds this case to be the most on par with

7   the Ninth Circuit's decision in Confederated Tribes, 928 F.2d

8   1496.  In that case, a dispute arose out of various rights to the

9   Quinault Indian Reservation that, by treaty and executive order,

10  was made "for the use of the Quinault, Quillehute, Hoh, Quit, and

11  other tribes of fish-eating Indians on the Pacific coast."  Id.

12  at 1498 (internal quotations omitted).  Several non-Quinault

13  affiliated tribes and individual tribe members eventually

14  initiated an action seeking "to enjoin federal officials from

15  'dealing with the Quinault Indian Nation...as the governing body

16  of the Quinault Indian Reservation.'"  Id.  The plaintiffs also

17  sought a declaration that they "ha[d] equal rights in the

18  Reservation, [were] entitled to be treated equally as federally

19  recognized Indian tribes by [defendants], and that the governing

20  body of the Reservation must be constituted so as to reflect

21  those rights and the rights of all Indians who are alloted at the

22  Reservation, including the individual plaintiffs.'"  Id.

23  Accordingly, the plaintiffs "challenge[d] the United States'

24  continuing recognition of the Quinault Indian Nation as the sole

25  governing authority for the Quinault Indian Reservation."  Id. at

26  1497 (emphasis added).

27  ///

28  ///

16

1    The district court dismissed the action, holding that the

2    Quinault Nation was an indispensable party that could not be

3    joined since the Tribe had not waived its sovereign immunity.

4    Id.  The Ninth Circuit agreed, reasoning, in part, that:

5         [T]he Quinault Nation undoubtedly has a legal interest
          in the litigation.  Plaintiffs seek a complete
6         rejection of the Quinault Nation's current status as
          the exclusive governing authority of the reservation.
7         Even partial success by the plaintiffs could subject
          both the Quinault Nation and the federal government to
8         substantial risk of multiple or inconsistent legal
          obligations.
9

10   Id. at 1498.

11       This case is no different.  Plaintiffs here, as in

12   Confederated Tribes, seek a "complete rejection" of the 2011

13   Elected Council's current recognition as the "exclusive governing

14   authority" of the Tribe.  If Plaintiffs' action is successful,

15   the current council will be divested of its right to govern, and

16   the Tribe will be left with no recognized body through which to

17   transact with the United States.  Moreover, for the Court to

18   reach the result sought by Plaintiffs, it must delve into the

19   merits of tribal leadership and membership disputes, disputes the

20   Tribe, not this Court, should be permitted to resolve.

21   Accordingly, the 2011 Elected Council and the Tribe itself are

22   necessary parties to this action.

23       Plaintiffs disagree, of course, and argue that they are not

24   attacking the EHD itself, but are merely attacking the flawed

25   administrative procedures from which the EHD was developed.

26   ///

27   ///

28   ///

17

1  According to Plaintiffs, "[t]he Ninth Circuit has only found

2  interests legally protected for Rule 19 purposes where a

3  plaintiff's claims could jeopardize the non-party's bargained-for

4  exchange or share of a limited resource."  Opposition, 8:4-8

5  (citing Makah Indian Tribe v. Verity, 910 F.2d 555 (9th Cir.

6  1990); American Greyhound, 305 F.3d 1015; Kescoli v. Babbitt,

7  101 F.3d 1304 (9th Cir. 1996)).  Plaintiffs then go on to argue

8  that "the Ninth Circuit has found no legally protected interest

9  in a non-party to a particular regulatory procedure or outcome."

10  Opposition, 8:9-10 (citing Makah, 910 F.2d at 559).

11      Plaintiffs' are incorrect.  First, nothing in the case law

12  limits finding legally protected interests to the above

13  circumstances.  In addition, even if Plaintiffs' characterization

14  of the applicable authorities was correct, their argument still

15  fails for the fundamental reason just discussed that Plaintiffs'

16  claims here very well may jeopardize the absent parties' shares

17  of a "limited resource," namely the right to govern the Tribe.

18  Accordingly, the Court rejects the narrow premise on which

19  Plaintiffs rely as to when a party is considered necessary under

20  Rule 19.

21      Moreover, while the court in Makah did state that

22  "[g]enerally, there is no legally protected interest in

23  particular agency procedures," it was in a context factually

24  distinguishable from the circumstances before this Court.

25  910 F.2d at 558.  In that case, the Makah Indian Tribe, whose

26  fishing rights were guaranteed by treaty, challenged both federal

27  regulations setting salmon fishing quotas and the regulatory

28  process leading to implementation of those quotas.

1   <u>Id.</u> at 556-57.  The district court dismissed all of the

2   plaintiff's claims for failure to join indispensable parties,

3   namely the twenty-three other treaty tribes in the area.  <u>Id.</u> at

4   557.

5       The Ninth Circuit affirmed in part and reversed in part the

6   district court's decision.  According to that court, the district

7   court did not abuse its discretion in holding the absent tribes

8   were necessary and indispensable "to the extent the Makah

9   [sought] a reallocation of the...harvest or challenge[d]

10  the...inter-tribal allocation decisions."  <u>Id.</u> at 559.  That

11  court went on to "disagree, however, that the absent tribes

12  [were] necessary to the Makah's procedural claims for which they

13  [sought] prospective injunctive relief."  <u>Id.</u>

14      Seizing on the latter holding, Plaintiffs ask this Court to

15  find that neither the Tribe nor the 2011 Elected Council need be

16  joined as parties to this action because Plaintiffs, like the

17  Makah Tribe, raise only challenges to the administrative process

18  employed by Echo Hawk and the remaining Defendants.  This

19  argument is flawed because all of Plaintiffs' requested relief is

20  retroactive.  Indeed, Plaintiffs do not seek to ensure that

21  future Department decisions are made through a different,

22  procedurally proper, process.  <u>See id.</u> ("To the extent that the

23  Makah seek relief that would affect only the future conduct of

24  the administrative process, the claims...are reasonably

25  susceptible to adjudication without the presence of other

26  tribes.");

27  ///

28  ///

1  see also Cachil Dehe Band of Wintun Indians of the Colusa Indian
2  Community v. California, 547 F.3d 962, 977 (9th Cir. 2008)
3  ("Colusa") (observing that in Makah the court "made clear that
4  Rule 19 required 'the scope of the relief available to the Makah
5  on their procedural claims [to be] narrow' and limited to
6  prospective relief" and holding that in a dispute regarding
7  gaming licenses "Rule 19 necessarily confines the relief that may
8  be granted...to remedies that do not invalidate the licenses that
9  have already been issued to the absent [tribes].").  Instead,
10 Plaintiffs ask this Court to enjoin enforcement of the EHD, which
11 means the Court is being asked to order the United States to
12 cease its recognition of the 2011 Elected Council and to leave
13 the Tribe with no recognized Tribal government.  The Court cannot
14 grant the requested relief absent the party who will be removed
15 from power or the entity on whose behalf each group seeks to act.
16      Given the actual relief sought by Plaintiffs, this case is
17 therefore much more similar to the portion of Makah in which the
18 appellate court upheld the district court's finding that absent
19 tribes were necessary parties under Rule 19.  As is pertinent to
20 that holding, the plaintiff tribe had challenged the allocation
21 of a finite resource (i.e., the number of salmon available for
22 harvest).  An award of a bigger allocation of salmon to the
23 plaintiff would necessarily have meant that the remaining tribes
24 were allocated a smaller share of the collective "pot."  Those
25 absent tribes had a legally protectable interest in preserving
26 their own allocations and the district court's dismissal of the
27 plaintiff's quota-related claims was thus upheld on appeal.
28 ///

1    In this case, as stated, Plaintiffs similarly seek to
2    reallocate a finite resource, namely the ability to represent the
3    Tribe in government-to-government relations with the United
4    States.  While Plaintiffs argue that "[s]peculation that Gholson
5    will not retain recognition after remand to DOI does not suffice"
6    to rise to the level of a legally protected interest, they miss
7    the point that by this action, they seek to immediately divest
8    the 2011 Elected Council of its <u>current</u> recognition.[6]
9    Opposition, 8:20-21.  Indeed, only one group can be recognized
10   for this purpose.  Accordingly, even if Plaintiffs don't seek an
11   order of this Court mandating that the United States recognize
12   their faction, they do seek the inverse, an order mandating that
13   the United States <u>terminate</u> its current recognition of a
14   competing faction or, stated another way, an order mandating that
15   the 2011 Elected Council be divested of recognition and that the
16   Tribe itself be divested of a recognized governing body.  A
17   decision in Plaintiffs' favor would thus deprive an absent party,
18   the 2011 Elected Council, of its current interest in being the
19   Tribe's sole governing body.  Remand would also deprive the Tribe
20   of any stability it might enjoy by having a single recognized
21   body through which to work with the United States on a
22   government-to-government basis and from having the ability to
23   resolve membership and leadership disputes on its own.
24   ///
25   ///
26

27   [6] The Court is aware Plaintiffs prefer to focus on Gholson
     as an individual.  It is also cognizant, however, that the
28   interests at stake here belong not just to Gholson but to the
     entire Council and to the Tribe.

This relief is far from prospective only and supports a finding here that both the Tribe and the 2011 Elected Council are necessary parties.

Plaintiffs' remaining authorities are also of no help to them.  For example, Plaintiffs argue that "[i]n Colusa, the court found that the non-party tribes had no legally protected interest in a particular legal interpretation of the tribal-state compacts held by the state."  Opposition, 8:10-12 (citing Colusa, 547 F.3d at 976 n.19).  Colusa, however, is not on point.  In that case, a federally recognized Indian tribe (hereafter "Colusa") sued the State of California, its Governor and the California Gambling Control Commission (collectively, the "State") challenging, among other things, the State's interpretation of a bilateral gaming compact the tribe had entered into with the government.  547 F.3d at 965-66.  Sixty-two other tribes (the "Compact Tribes") executed essentially the same bilateral compacts as well.  Id. at 966.  In the portion of that opinion relied upon by Defendants, the Ninth Circuit made clear that, despite the similarity between Colusa's compact and the other compacts entered between the Compact Tribes and the State, the absent Compact Tribes were not necessary parties to Colusa's litigation regarding the interpretation of its own independent bilateral agreement.  Id. at 976.  That court observed that it had "never held that the mere coincidence of parallel and independent contractual obligations vis-a-vis a common party requires joinder of all similarly situated parties."  Id.

///

///

1      That case thus stands for the unremarkable proposition that
2  a stranger to a contract is not a necessary party to a
3  contractual dispute even if that stranger entered into a
4  substantially similar, or even identical, contract as well.  Any
5  attempt to analogize to Colusa is thus rejected because here,
6  unlike in Colusa, the rights of the absent parties are directly
7  related to the viability of the EHD and to the relief sought by
8  Plaintiffs.

9      Plaintiffs also argue that "[i]n Yellowstone County v.
10  Pease, the court found that the tribe was not a necessary party
11  despite the fact that the litigation would determine the extent
12  of its jurisdiction." Id., 8:12-14 (citing 96 F.3d 1169 (9th
13  Cir. 1996)).  Yellowstone County, however, is also unremarkable
14  in its holding.  The plaintiff there, a member of the Crow Tribe
15  of Indians, owned property within the boundaries of the Crow
16  Reservation.  96 F.3d at 1171.  For a number of years he failed
17  to pay his state property taxes, and he eventually filed an
18  action in the Crow Tribal Court to enjoin Yellowstone County from
19  imposing property taxes on his land.  Id.  The tribal court
20  enjoined the County from collecting the property taxes, and the
21  County eventually filed a declaratory relief action against the
22  taxpayer in federal court arguing, among other things, that the
23  tribal court lacked jurisdiction over the plaintiff's case.  Id.
24  ///
25  ///
26  ///
27  ///
28  ///

On appeal from the district court's subsequent decision that
the tribal court lacked subject matter jurisdiction, the taxpayer
argued that Yellowstone County was required also to have joined
either the tribe or the tribal court in the litigation since,
according to the taxpayer, the "County [could not] obtain
complete relief without joining the Tribe because the 'Crow Tribe
could continue to assert its jurisdiction and enforce the
judgment of its court if it [was] not made a party to the
action." Id. at 1172.  The Ninth Circuit rejected the
plaintiff's argument because, among other things, "concluding
that courts are necessary parties under Rule 19(a) whenever their
jurisdiction is challenged would lead to absurd results." Id. at
1173.  Indeed, it is illogical to presume courts are necessary
parties to every action in which jurisdictional limitations are
raised.  If that were the case, this Court would be a necessary
party in any of a number of disputes.  Accordingly, Yellowstone
County simply has no relevance here.

Finally as to this point, Plaintiffs argue that, even
assuming that the Tribe has an interest in this case, and that
Gholson represents the Tribe, Defendants can adequately represent
the interests of the absent parties.  "In assessing an absent
party's necessity under Federal Rule of Civil Procedure 19(a),
the question whether that party is adequately represented
parallels the question whether a party's interests are so
inadequately represented by existing parties as to permit
intervention of right under Federal Rule of Civil Procedure
249a)." Shermoen v. United States, 982 F.2d 1312, 1318 (9th Cir.
1992).

"Consequently, [the Court] will consider three factors in determining whether existing parties adequately represent the interests of the absent tribes: whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments; whether the party is capable of and willing to make such arguments; and whether the absent party would offer any necessary element to the proceedings that the present parties would neglect." Id. (internal citations and quotations omitted).

Plaintiffs believe that both "Defendants and Gholson have an identical interest in upholding [the EHD]." Opposition, 8:23-25. Again, however, Plaintiffs characterization of the relevant interests is misplaced. While the Tribe has an interest in ensuring that it is governed by the proper council based on the will of its members and in ensuring compliance with its own constitution and ordinances, and the 2011 Elected Council has an interest in maintaining its position as the Tribe's recognized governing body, Defendants, to the contrary, are primarily interested only in being able to recognize some tribal government with which to work on a government-to-government basis. Given the divergent interests of Defendants and the absent parties, this Court cannot say with any certainty that Defendants "will undoubtedly make all of the absent [parties'] arguments" or that Defendants are even capable of doing so. The Court does find, however, that both the Tribe and the Gholson Faction will offer necessary elements, primarily currently unrepresented perspectives on tribal issues, that in their absence will likely be neglected.

1   This Court therefore concludes that Defendants cannot adequately

2   represent either the Tribe or the 2011 Elected Council and that

3   the interests of the absent parties in this action would be

4   impaired or impeded by adjudicating this case without their

5   joinder.  Both the Tribe and the 2011 Elected Council are thus

6   required parties under Rule 19(a).

7

8         **C.   Whether the Tribe and the 2011 Elected Council can be**
          **joined as parties.**

9

10        Neither the Tribe nor the 2011 Elected Council can feasibly

11  be joined in this action.  "Federally recognized Indian tribes

12  enjoy sovereign immunity from suit." <u>Pit River Home & Agric.</u>

13  <u>Co-op. Ass'n v. United States</u>, 30 F.3d 1088, 1100 (9th Cir.

14  1994); <u>Confederated Tribes</u>, 928 F.2d at 1499 ("Indian

15  tribes...are sovereign entities and are therefore immune from

16  nonconsensual actions in state or federal court.").  The 2011

17  Elected Council is likewise "immune from suit insofar as [it is]

18  acting as the governing body of the tribe." <u>Timbisha Shoshone</u>,

19  2003 WL 25897083 at *3 (<u>citing</u> <u>United States v. State of Oregon</u>,

20  657 F.2d 1009, 1013 n.8 (9th Cir. 1982)).  While the Court is

21  aware that Plaintiffs believe the 2011 Elected Council should not

22  be recognized by the United States Government, Plaintiffs do not

23  put forth any principled argument as to why sovereign immunity

24  should not attach here.  Accordingly, in light of the sovereign

25  immunity afforded both the Tribe and the 2011 Elected Council,

26  the Court now finds that neither party can be joined.

27  ///

28  ///

1     **D.    Whether the Tribe and the 2011 Elected Council are**
2               **Indispensable Parties.**

3     Accordingly, this Court turns to the only remaining question
4  under Rule 19, which is whether "in equity and good conscience,
5  the action should proceed among the existing parties or should be
6  dismissed" because the Tribe and the 2011 Elected Council are
7  indispensable parties.  Fed. R. Civ. P. 19(b).  Pursuant to Rule
8  19(b), this Court will consider: "(1) the extent to which a
9  judgment rendered in the person's absence might prejudice that
10  person or the existing parties; (2) the extent to which any
11  prejudice could be lessened or avoided by (A) protective
12  provisions in the judgment, (B) shaping the relief, or (C) other
13  measures; (3) whether a judgment rendered in the person's absence
14  would be adequate; and (4) whether the plaintiff would have an
15  adequate remedy if the action were dismissed for nonjoinder."

16  "Because both the Tribe and the [2011 Elected Council] have
17  sovereign immunity, little balancing of these factors is
18  required."  Timbisha Shoshone, 2003 WL 25897083, *6 (citing
19  Kescoli, 101 F.3d 1311 ("If the necessary party is immune from
20  suit, there may be very little need for balancing Rule 19(b)
21  factors because immunity itself may be viewed as the compelling
22  factor.") (internal citations and quotations omitted)).  When
23  taken together, however, the factors nonetheless weigh in favor
24  of this Court's conclusion that both the Tribe and the 2011
25  Elected Council are indispensable.

26  "The first factor in the Rule 19(b) analysis is essentially
27  the same as the legal interest test in the 'necessary party'
28  analysis."

1    *Timbisha Shoshone*, 2003 WL 255897083, *6 (citing *Quileute Indian*

2    *Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir. 1994)); see also

3    *American Greyhound*, 305 F.3d at 1024-25 ("Not surprisingly, the

4    first factor of prejudice, insofar as it focuses on the absent

5    party, largely duplicates the consideration that made a party

6    necessary under Rule 19(a)."). For the reasons already stated

7    above, then, the prejudice prong weighs in favor of an

8    indispensability finding here.

9        In evaluating the next two prongs, the Court finds that this

10   prejudice cannot be effectively minimized, nor can an adequate

11   judgment be rendered, absent the presence of the necessary

12   parties. Granting any of Plaintiffs' requested relief would

13   result in leaving the Tribe with no recognized government, which,

14   as has already been proven in this case, would be extremely

15   detrimental to a sovereign entity just barely beginning to

16   rebuild after years of unrest. There is also no way, or at least

17   the Court has been presented with none, to grant Plaintiffs'

18   relief without divesting the 2011 Elected Council of its current

19   position as the Tribe's recognized government. These factors

20   thus favor dismissal.

21       The fourth prong likewise favors dismissal. Even though

22   there remains no alternative forum available to Plaintiffs at

23   this point, which would seem to weigh in Plaintiffs' favor here,

24   the Ninth Circuit has "recognized that a plaintiff's interest in

25   litigating a claim may be outweighed by a tribe's interest in

26   maintaining its sovereign immunity."

27   ///

28   ///

28

1    <u>Kescoli</u>, 101 F.3d at 1311 (<u>quoting</u> <u>Confederated Tribes</u>, 928 F.2d

2    at 1500); <u>see</u> <u>also</u> <u>American Greyhound</u>, 305 F.3d at 1025 ("[W]e

3    have regularly held that the tribal interest in immunity

4    overcomes the lack of an alternative remedy or forum for the

5    plaintiffs.").   Indeed, the Tribe's sovereign immunity in this

6    case presents a compelling factor favoring dismissal.   <u>See</u>

7    <u>Kescoli</u>, 101 F.3d at 1311.   Accordingly, when evaluating the

8    facts and circumstances of this case as a whole, the Court finds

9    that equity and good conscience demand that this action be

10   dismissed.

11

12          **E.    Whether Plaintiffs' Complaint is Saved by the Public**
             **Rights Exception.**

13

14          Finally, Plaintiffs argue that the public rights exception

15   should apply to save their case from dismissal pursuant to Rule

16   19 because "Plaintiffs seek to overturn not only the DOI

17   decisions that have injured them, but to prevent DOI from

18   insulating its tribal government recognition decisions from

19   judicial review and to prevent DOI from relying on the 'Rollback

20   Rule.'"   Opposition, 10:1-4.   The Ninth Circuit has explained the

21   public rights exception as follows:

22          The contours of the public rights exception have not
            been clearly defined.  Generally, however, the
23          litigation must transcend the private interests of the
            litigants and seek to vindicate a public right.   See
24          Kickapoo Tribe of Indians v. Babbitt, 43 F.3d 1491,
            1500 (D.C. Cir. 1995). Further, although the litigation
25          may adversely affect the absent parties' interests, the
            litigation must not "destroy the legal entitlements of
26          the absent parties."  Conner v. Burford, 848 F.2d 1441,
            1459 (9th Cir. 1988), cert. denied, 489 U.S. 1012
27          (1989); see also Shermoen v. United States, 982 F.2d
            312, 1319 (9th Cir. 1992), cert. denied, 509 U.S. 903
28          (1993).

                                   29

1   Kescoli, 101 F.3d at 1311.

2        Contrary to what Plaintiffs would have the Court believe,
3   they are not vindicating some public interest in preventing DOI
4   from insulating its decision or from relying on the "Rollback
5   Rule."  Indeed, none of Plaintiffs' requested relief is limited
6   to these issues nor is it prospective in nature; instead, all of
7   their relief sought goes to invalidating the EHD.  The essence of
8   Plaintiffs' dispute with the Government is that Plaintiffs, not
9   the 2011 Elected Council are the proper governing body of the
10  Tribe and should be recognized as such.  At its most basic, this
11  is therefore essentially a private suit, one in which the United
12  States has become embroiled primarily because of the long-
13  standing feud between Plaintiffs and the absent faction.
14  Plaintiffs' dispute thus does not focus on "vindicating a larger
15  public interest."  To the contrary, as already discussed at great
16  length, Plaintiffs' claims significantly and directly threaten
17  the rights of the absent parties.  Accordingly, in light of the
18  "essentially private nature of the present litigation and the
19  significant threat to the [absent parties'] interests, the
20  application of the public rights exception is not appropriate."
21  Kescoli, 101 F.3d at 1312; see also American Greyhound, 305 F.3d
22  at 1026 ("Almost any litigation...can be characterized as an
23  attempt to make one party or another act in accordance with the
24  law.").  Plaintiffs' FAC must be dismissed.

25  ///

26  ///

27  ///

28  ///

**CONCLUSION**

For the reasons just stated, Defendants' Motion to Dismiss (ECF No. 46) is GRANTED with leave to amend, and Plaintiffs' Request for Oral Argument (ECF No. 57) is DENIED.  Not later than twenty (20) days following the date this Memorandum and Order is electronically filed, Plaintiffs may (but are not required to) file an amended complaint.  If no amended complaint is filed within said twenty (20) day period, without further notice to the parties, the causes of action dismissed by virtue of this order will be dismissed with prejudice.

IT IS SO ORDERED.

Dated: May 9, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE