1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   | TIMBISHA SHOSHONE TRIBE, et al., | No. 2:11-cv-00995-MCE-DAD |

12                    Plaintiffs,

13          v.                              **MEMORANDUM AND ORDER**

14   UNITED STATES DEPARTMENT OF
     THE INTERIOR, et al.,
15

16                    Defendants.

17

18          The Timbisha Shoshone Tribe ("Tribe"), Joseph Kennedy, Angela Boland, Grace

19   Goad, Erick Mason, Hillary Frank, Madeline Esteves and Pauline Esteves filed their

20   Second Amended Complaint ("SAC") in this action on May 29, 2012, seeking declaratory

21   and injunctive relief against Defendants United States Department of the Interior ("DOI"),

22   Bureau of Indian Affairs ("BIA"), Donald Laverdure, Acting Assistant Secretary of the

23   Interior for Indian Affairs, Amy Dutschke ("Dutschke"), Director of the Pacific Regional

24   Office of the BIA, Troy Burdick ("Burdick"), Superintendent of the Central California

25   Agency of the BIA, Margaret Cortez, Bill Eddy, Earl Frank, George Gholson and Clyde

26   Nichols  (collectively, "Defendants").

27   ///

28   ///

                                              1

1  Plaintiffs allege injuries suffered as a result of two DOI decisions issued by then DOI

2  Assistant Secretary of Indian Affairs Larry Echo Hawk on March 1, 2011 ("EHD I") and

3  July 29, 2011 ("EHD II") (collectively referred to as the "EHDs").  Presently before the

4  Court is Defendants' Motion to Dismiss Plaintiff's SAC.  (ECF No. 61; ECF No. 64.)  For

5  the following reasons, the Court will grant Defendants' Motion to Dismiss for failure to

6  join indispensable parties.[1]  The Court will not permit further leave to amend.

7

8                                      **BACKGROUND**[2]

9

10     **A.     Tribal History**

11

12         In 1982, the DOI formally recognized the Tribe as a sovereign Indian nation with

13  whom the United States would maintain government-to-government relations.  The Tribe

14  organized itself under a written Constitution that establishes the General Council as the

15  Tribe's supreme governing body.  The General Council has delegated some of its

16  powers to a five-member Tribal Council.

17         The Tribe's Constitution limits tribal membership to persons listed on the 1978

18  Base Roll and to certain of those members' lineal descendants.  The Constitution

19  requires that the Tribal Enrollment Committee "remove any person enrolled erroneously,

20  fraudulently or otherwise incorrectly enrolled from the membership list."

21         The Tribe holds general elections for the Tribal Council every November, and

22  members serve two-year, staggered terms.  The Tribe's Constitution requires that an

23  Election Board certify these elections.

24  _____

25         [1] Because oral argument would not have been of material assistance, the Court ordered this
    matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

26         [2] Unless otherwise noted, the following facts are taken, sometimes verbatim, from Plaintiffs' SAC.
27  (ECF No. 59.)  "Because the question whether a party is indispensable 'can only be determined in the
    context of particular litigation,' it is necessary to set forth in some detail the legal and factual context of the
    present controversy."  Am. Greyhound Racing, Inc. v. Hull, 305 F.3d 1015, 1018 (9th Cir. 2002) (quoting
28  Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 118 (1968)).

1  The Tribe's "Election Ordinance" governs the actions of the Election Board.  Because

2  members of this Election Board may only be removed for specific, non-political reasons,

3  the Board generally remains unchanged from year to year.

4

5          **B.      The Tribe's Leadership Dispute**

6

7          The current lawsuit is the culmination of a long-standing dispute over the election

8  and composition of the proper Tribal Council. While it is undisputed that in 2006 the

9  Tribal Council consisted of Joe Kennedy ("Kennedy"), who was elected as Chairman, Ed

10  Beaman ("Beaman"), Madeline Esteves, Virginia Beck ("Beck") and Cleveland Casey

11  ("Casey") ("2006 Council"), since then multiple factions have claimed to lead the Tribe.

12          The current fracture in the Tribe's governance began on August 25, 2007, when

13  the 2006 Council held a Tribal Council meeting.  Charges were brought against Beaman

14  and Beck seeking their removal from office.  Beaman, Beck and Casey left the meeting,

15  though Casey returned at some point before eventually leaving again.  The remaining

16  members of the 2006 Council determined Beaman and Beck had resigned, and the

17  council purportedly replaced Beck with another Tribe member (hereafter this group is

18  referred to as the "2006 Kennedy Faction"), while leaving Beaman's seat vacant for the

19  next election.  Beaman, Beck and Casey (the "Beaman Faction") subsequently met

20  separately and passed resolutions also purporting to take control of the Tribe's

21  administration.

22          In November of 2007, both the 2006 Kennedy Faction and the Beaman Faction

23  held general elections that resulted in the election of the "2007 Kennedy Council" and

24  the "Beaman Council."  On December 14, 2007, Burdick issued a decision declining to

25  recognize the results of either election.

26  ///

27  ///

28  ///

3

1   The 2007 Kennedy Council subsequently called a General Council meeting, which

2   convened on January 20, 2008.  Satisfied a quorum existed, the General Council

3   adopted several resolutions purporting to ratify, as is relevant here, the general election

4   resulting in the election of the 2007 Kennedy Council and the 2006 Kennedy Faction's

5   interpretation of the term "resign" in the Timbisha Constitution.

6       On February 29, 2008, Burdick rescinded his December 14, 2007, decision and

7   purported to recognize the 2007 Kennedy Council.  The Beaman Council appealed that

8   decision ("Beaman Appeal"), staying its effect.

9       On September 25, 2008, the 2007 Kennedy Council Enrollment Committee

10  performed a review of the Tribe's membership rolls and determined seventy-four people

11  did not qualify for Tribe membership.  The Enrollment Committee notified those

12  members they were to be disenrolled, and, when the time to appeal expired, the 2007

13  Kennedy Council performed the ministerial act of adopting resolutions confirming the

14  membership revocations.  During this same time frame, in September 2008, George

15  Gholson ("Gholson"), a member of the Tribe purportedly disenrolled pursuant to the

16  above 2007 Kennedy Council efforts, convened another General Council meeting.  At

17  this meeting, Gholson allegedly recalled Kennedy and replaced him with both Gholson

18  and another individual.  On October 17, 2008, based on the actions taken at that

19  General Council meeting, Burdick issued a decision recognizing Gholson as the

20  Chairman of the Tribe.  Although Burdick's decision was not yet effective, Gholson

21  allegedly used it to justify the removal of Tribal assets from the Tribal Office on the Death

22  Valley reservation.

23      Just a few weeks later, on November 10, 2008, Burdick issued another decision

24  recognizing the 2006 Council.  The following day, the 2007 Kennedy Council Tribal

25  Election Board conducted a general election, resulting in the election of the "2008

26  Kennedy Council."  No other election was held at this time.

27      On December 4, 2008, Defendant Dutschke's predecessor, Regional Director

28  Dale Morris ("Morris"), nonetheless recognized Gholson as the Tribe's chairman.

1   A few days later, on December 12, 2008, Gholson again allegedly removed Tribal

2   property from the Tribal Office in Death Valley.  On December 22, 2008, Morris

3   rescinded his decision recognizing Gholson as the Tribe's chairman.  Gholson

4   nevertheless refused to return any Tribal property.

5          On February 17, 2009, Morris reversed Burdick's decision, which recognized the

6   2007 Kennedy Council.  Additionally, on March 24, 2009, Morris reversed Burdick's

7   October 17, 2008, decision recognizing Gholson.  Morris proposed in both decisions to

8   recognize the 2006 Tribal Council.  The 2008 Kennedy Council appealed Morris's

9   February 17 decision ("Kennedy Appeal"), and Gholson, among others, appealed the

10  March 24 decision.  These two groups will hereafter be referred to as the "Kennedy

11  Faction" and the "Gholson Faction."  Echo Hawk took jurisdiction over and consolidated

12  these appeals.

13         In November of both 2009 and 2010, the Kennedy Faction and the Gholson

14  Faction each purportedly held general elections resulting in the election of what will be

15  referred to as the "current Kennedy Council" and the "Gholson Council."  According to

16  Plaintiffs, the Gholson Faction permitted disenrolled members to vote in its elections and

17  to elect to its council disenrolled members or individuals who did not qualify for

18  membership.

19         The Gholson Faction eventually withdrew its appeal of the March 24, 2009,

20  decision but nonetheless continued to work to freeze Tribe bank accounts.  On

21  February 24, 2010, Burdick issued a decision determining that no Tribal Council existed.

22  The Kennedy Faction appealed the decision, and the BIA has not yet acted on that

23  appeal.

24         Plaintiffs allege Burdick's latest decision was used to again freeze Tribal funds

25  and to convince federal agencies to cease funding of various Tribe services.

26  ///

27  ///

28  ///

1

2

### C.     Echo Hawk's March 1, 2011, Decision

3     On March 1, 2011, Echo Hawk issued a decision on the Beaman and Kennedy

4  Appeals. That decision affirmed Morris's decision rejecting the validity of the resolutions

5  purporting to give power to the 2007 Kennedy Council and recognized the Gholson

6  Council "for the limited purpose of carrying out essential government-to-government

7  relations and holding a special election that complies with the tribal law."  (ECF No. 48-1

8  at 10-11.)  Echo Hawk provided two justifications for his latter decision:  1) more votes

9  were cast in the Gholson-conducted election, supporting the conclusion it would be less

10  intrusive to vest temporary recognition in that council; and 2) despite Kennedy's belief

11  that numerous members voting in the Gholson-conducted elections had been

12  disenrolled, because the DOI rejected those disenrollments on procedural grounds, any

13  election barring those members from voting was facially invalid.

14

### D.     Initiation of the Current Litigation

16

17     Six weeks after issuance of EHD I, Plaintiffs, both as individuals and as members

18  of the current Kennedy Council, which was purportedly empowered to act on behalf of

19  the Tribe, filed their Complaint in this action.  They argued that EHD I was arbitrary and

20  capricious because Echo Hawk had:  (1) improperly considered evidence outside of the

21  Administrative Record in deciding the appeal; (2) misapplied Tribal enrollment law;

22  (3) misapplied Tribal Election law; and (4) relied on irrelevant factors and ignored

23  relevant factors in rendering his decision.  Plaintiffs also argued EHD I was issued in

24  violation of Defendants' federal trust responsibilities.

25  ///

26  ///

27  ///

28  ///

1    Plaintiffs subsequently filed a Motion for a Preliminary Injunction.  In that motion,

2    Plaintiffs argued that the EHD:

3

4    [D]id not consider tribal membership or the qualifications of candidates or
     voters as at all relevant; based its conclusions and reasoning on facts not

5    in the record, including vote totals using very different qualifications for
     voting in two elections held by two rival factions; authorized the

6    replacement tribal government to conduct a new election . . . even though
     the EHD also denied the validity of the election that is the sole claim to

7    legitimacy for the replacement tribal government; and offered no sensible
     or reasonable basis for replacing the tribal government or authorizing the

8    replacement government to conduct a new election.

9    (ECF No. 20 at 7.)

10   Plaintiffs thus sought an order enjoining Defendants from:

11   (1) assisting in the conduct, or recognizing the results of, the imminent
     purported special election administered by the Gholson faction in which

12   persons who do not meet the criteria for membership in the Tribe are
     permitted to vote or run for office; (2) further recognition or assistance to

13   the replacement tribal government; and (3) failing to recognize and assist
     legitimate Tribal Council led by plaintiff Tribal Council members.

14

15   (Id. at 7-8.)  This Court denied Plaintiff's Motion on May 16, 2011. (ECF No. 38.)

16

17   **E.      The 2011 Election**

18

19   In the meantime, in keeping with the mandates of EHD I's interim recognition, the

20   Gholson Council conducted a Tribal Council election.  The Tribe elected George

21   Gholson as Chairperson, Bill Eddy as Vice-Chairperson, Margaret Cortez as Secretary-

22   Treasurer and Clyde Nichols and Earl Frank as Executive Members.  (ECF No. 48.)

23   According to Plaintiffs, Gholson included Plaintiffs on the election ballot but did not

24   permit Plaintiffs to provide campaign statements to voters.

25   ///

26   ///

27   ///

28   ///

7

1   Gholson also purportedly again permitted non-members to vote in addition to preventing

2   his opponents from challenging ballots or voters, examining or viewing the ballots,

3   envelopes or serial numbers on the ballots and envelopes, examining any of the

4   documentation after the election, or utilizing any other means by which Plaintiffs could

5   have verified the election results.

6       Without admitting the legitimacy of the election, more than twenty percent of the

7   General Council appealed the election to Gholson, alleging a number of infirmities in the

8   electoral process.  Gholson refused to provide documents that Plaintiffs requested, but

9   he apparently scheduled a hearing and later rejected Plaintiffs' appeal.  According to

10  Plaintiffs, however, the DOI failed to review Plaintiffs' objections to the election prior to

11  declaring that Gholson had reasonably rejected their challenges.

12

13      **F.      Echo Hawk's July 29, 2011, Decision**

14

15      On July 29, 2011, Echo Hawk issued another decision, EHD II, in which he stated

16  that Gholson's 2011 election complied with tribal law and that Gholson had addressed

17  the appeals before him adequately.  Plaintiffs now allege that EHD II impermissibly fails

18  to include any reasoning or legal basis for its conclusions as the APA requires and that it

19  fails to acknowledge various violations of Plaintiffs' free speech rights.  Plaintiffs also

20  aver they were denied any meaningful agency review by issuance of EHD II because

21  Echo Hawk made his decision immediately final for the DOI.

22      In EHD II, Echo Hawk reasoned that the election, rather than his decision in

23  EHD I, "constituted the resolution of an internal tribal dispute in a valid tribal forum."

24  (ECF No. 48-2 at 3.)

25  ///

26  ///

27  ///

28  ///

He further stated:

> The Timbisha Shoshone people embraced a tribal government by means
> of an election compliant with their Constitution.  The Federal Government
> may not ignore or reject the results of a tribal election that clearly states the
> will of a sovereign Indian nation.  Therefore, the Department should
> recognize the Timbisha Shoshone Tribal government consisting of the five
> people identified in the Election Committee's report as having received the
> most votes in the April 29 election.

(Id.)  Finally, Echo Hawk noted that his decision was justified by the long-hiatus in

government-to-government relations with the Tribe, especially given the fact that the

interim recognition of the Gholson Council, which extended only 120 days, expired

approximately one month prior, leaving the Tribe with no recognized governing body.

(Id. at 4.)

### G.     Plaintiffs' First and Second Amended Complaints

A few days after EHD II was issued, Plaintiffs filed their First Amended Complaint

alleging that:  (1) the EHDs improperly recognized the Gholson Faction based solely on

information not made part of the administrative record on appeal; (2) in issuing the

EHDs, DOI failed to defer to the Tribe's own interpretations of tribal law and entertained

appeals that had not been exhausted via internal tribal mechanisms; (3) DOI issued the

EHDs in contravention of rules and federal common law that bar its interference in tribal

membership decisions; (4) the EHDs impermissibly created a hiatus in recognition of a

tribal government since Echo Hawk determined there was no existing government

capable of recognition; and (5) in issuing the EHDs, Defendants improperly relied on

irrelevant factors and ignored relevant factors.

On May 9, 2012, this Court granted Defendants' Motion to Dismiss with leave to

amend, finding Plaintiffs failed to join indispensable parties.  (ECF No. 58 at 2.)  On

May 29, 2012, Plaintiffs filed their SAC, realleging the five previous claims.

1    Plaintiffs also added a sixth claim, alleging the DOI violated the APA by discriminating

2    against the Kennedy Council when the DOI installed the Gholson Faction to conduct the

3    2011 election.  Plaintiffs claim the discrimination was in retaliation for the Kennedy

4    Faction's previous lawsuits against the federal government.

5           By way of substantive relief, Plaintiffs now ask this Court to declare "that the

6    [EHDs] violated the APA because they were made in a manner that was arbitrary,

7    capricious, and otherwise not in accordance with law, violated the Plaintiffs'

8    constitutional right to due process of law, exceeded DOI's statutory authorities, and

9    failed to comply with procedures required by law."  (ECF No. 59 at 49.)  Plaintiffs insist

10   they are not requesting that this Court declare one of the tribal factions legitimately

11   elected.  Plaintiffs further request that this Court remand the EHDs "for further

12   proceedings consistent with federal law," but Plaintiffs purport to not want this Court to

13   stay the EHD decisions or "enjoin DOI to recognize or cease to recognize any particular

14   tribal faction for the purpose of government-to-government relations."  (Id.)  Lastly,

15   Plaintiffs want this Court to declare "the Rollback Rule violates the APA" and enjoin the

16   DOI from using it "unless and until [the DOI] promulgates the rule pursuant to the APA."

17   (ECF No. 59 at 49.)  In addition, following this Court's prior dismissal of Plaintiffs' SAC,

18   Plaintiffs added the Gholson council members as Defendants.

19          Defendants responded by filing the present Motion to Dismiss Plaintiffs' SAC in its

20   entirety.  (ECF No. 61; ECF No. 64.)

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

**ANALYSIS**

2

3       Defendants challenge Plaintiffs' SAC on a number of fronts, arguing that this

4 Court lacks jurisdiction over the action for a variety of reasons, that Plaintiffs failed to

5 state a claim for violation of departmental regulations or the Due Process Clause, and

6 that the Tribe and the 2011 Elected Council are required parties that must either be

7 joined or the case dismissed pursuant to Federal Rule of Civil Procedure 19.[3]  The only

8 argument this Court need address is Plaintiffs' failure to join necessary and

9 indispensable parties under Rule 19.

10

11     **A.**    **The Tribe and 2011 Elected Council's Sovereign Immunity**

12

13       Following this Court's dismissal of Plaintiff's FAC for failure to join indispensable

14 parties (ECF No. 58), Plaintiffs filed their SAC, continuing to list the Tribe as a plaintiff

15 and adding the five members of the 2011 Elected Council – Margaret Cortez, Bill Eddy,

16 Earl Frank, George Gholson and Clyde Nichols – as Defendants.  (ECF No. 59.)

17 Plaintiffs contend that the Tribe and members of the 2011 Elected Council are not

18 indispensable parties under Rule 19 because Plaintiffs seek no relief from the council

19 members and the 2011 Elected Council has "no genuine legal interest in the subject

20 matter of this action."  (Id. at 7-8.)  Additionally, even if this Court were to find that the

21 Tribe and the five council members are indispensable parties, Plaintiffs argue the 2011

22 Elected Council cannot withstand joinder on sovereign immunity grounds because the

23 members were not legitimately elected.  (Id. at 8.)  Defendants counter that this Court

24 must dismiss the Tribe and the 2011 Elected Council members as parties because

25 sovereign immunity continues to protect their official actions and they have not waived

26 their immunity.  (ECF No. 65 at 13-15.)

27

28     [3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1    This Court first will address the issue of sovereign immunity.  The law is well

2    settled, and the parties agree (ECF No. 65 at 13; ECF No. 72 at 25), that Indian tribes

3    enjoy sovereign immunity absent an express waiver or federal statute to the contrary.

4    See United States v. Oregon, 657 F.2d 1009, 1012-13 (9th Cir. 1981).  It is clear the

5    Tribe has sovereign immunity and cannot be joined in this suit.  "This immunity also

6    extends to tribal officials when acting in their official capacity and within their scope of

7    authority."  Id. at 1012 n.8 (internal citations omitted).  The parties dispute whether

8    sovereign immunity shields the 2011 Elected Council from suit.

9    Plaintiffs cite Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58-59 (1978), and

10   Ex parte Young, 209 U.S. 123 (1908), to support their claim that "tribal officials do not

11   possess immunity from suits seeking prospective declaratory or injunctive relief for

12   violations of federal law."  (ECF No. 72 at 25.)  However, that misstates so-called the

13   Ex parte Young doctrine, which "permits actions for prospective non-monetary relief

14   against state or tribal officials in their official capacity to enjoin them from violating

15   federal law, without the presence of the immune State or tribe."  Salt River Project Agr.

16   Imp. & Power Dist. v. Lee, 672 F.3d 1176, 1181 (9th Cir. 2012) (emphasis added).

17   Plaintiffs admit that the issue in this case is "whether the Department of the

18   Interior violated the Constitution of the United States, the Administrative Procedure Act,

19   and other federal laws in its decision making procedures."  (ECF No. 59 at 9.)  Plaintiffs

20   assert the 2011 Elected Council was not elected in accordance with the Tribe's

21   Constitution; however, Plaintiffs do not make any claims that the members of the 2011

22   Elected Council themselves violated federal law to get elected.  Rather, Plaintiffs' claims

23   focus on the DOI's alleged wrongdoing.  In cases where courts found Tribal officials

24   were not immune, the officials themselves engaged in acts that violated federal law.

25   See Lee, 672 F.3d at 1181-82 (finding tribal officials did not have immunity from a suit,

26   which alleged they violated federal common law by violating the terms of a lease).

27   "[T]he Ex parte Young doctrine is a narrow exception . . . [that] allows government

28   officials to be sued in their official capacity for violating federal law."

1    Sodaro v. Supreme Court of Arizona, 2013 WL 1123384, at *1 (D. Ariz. Mar. 18, 2013)

2    (emphasis added) (citing Lee, 672 F.3d at 1181).  Because Plaintiffs do not allege any

3    members of the 2011 Elected Council violated federal law, the council members retain

4    their immunity from suit as tribal officials.

5          Therefore, because the 2011 Elected Council members did not waive their

6    immunity from this suit, they cannot be joined as parties.  The Tribe is likewise immune

7    from suit.

8

9          **B.      Federal Rule of Civil Procedure 19**

10

11              **1.     Overview**

12

13         Having concluded the Tribe is not a proper party, Plaintiff and the 2011 Elected

14   Council members are not proper defendants, the Court now addresses the issue of

15   whether they are indispensable parties under Rule 19.  Courts must dismiss cases in

16   which Plaintiffs cannot join indispensable parties.  In determining whether parties are

17   indispensable, courts must:  (1) determine whether the party is necessary to the suit

18   under Rule 19 (a); and if the party is necessary and cannot be joined, (2) determine

19   under Rule 19(b) "whether the party is indispensible so that in equity and good

20   conscience the suit should be dismissed."  Makah Indian Tribe v. Verity, 910 F.2d 555,

21   558 (9th Cir. 1990) (internal citations and quotations omitted).

22

23              **2.     Necessary Parties**

24         "There is no precise formula for determining whether a particular non-party is

25   necessary to an action.  The determination is heavily influenced by the facts and

26   circumstances of each case."  Confederated Tribes of the Chehalis Indian Reservation v.

27   Lujan, 928 F.2d 1496, 1498 (9th Cir. 1991) (internal citations and quotations omitted)

28   [hereinafter Chehalis].

1  In conducting this analysis, the Court must examine whether it can "award complete

2  relief to the parties present without joining the non-party" or, alternatively, "whether the

3  non-party has a legally protected interest in [the] action that would be impaired or

4  impeded by adjudicating the case without it."  Paiute-Shoshone Indians of the Bishop

5  Cmty. of the Bishop Colony, Cal. v. City of Los Angeles, 637 F.3d 993, 997 (9th Cir.

6  2011) (internal quotations and citations omitted).  If the Court answers either question in

7  the affirmative, the absent party is a necessary party.  Id.

8       Plaintiffs assert that "the Ninth Circuit has only found interests legally protected for

9  Rule 19 purposes where a plaintiff's claims could jeopardize the non-party's bargained-

10  for exchange or share of a limited resource."  (ECF No. 72 at 17.)  Plaintiffs conclude

11  that "[s]peculation that the [Gholson Faction] will not retain recognition after remand to

12  DOI" does not suffice as a legally protected interest" and the DOI can adequately

13  represent the Tribe and 2011 Elected Council's interests in this suit.  (Id. at 17-18.)

14       First, this Court previously rejected Plaintiffs' assertion that "legally protected

15  interests" are limited to non-party's bargained-for exchanges or limited resources; the

16  Court now reiterates that nothing in the case law supports such a limitation.  (ECF

17  No. 58 at 18.)  Second, even assuming Plaintiffs' assertion is correct, their claims still

18  could jeopardize a "limited resource."

19       Because only five members can sit on the council, those seats are a limited

20  resource.  While Plaintiffs assert that they do not request this Court mandate the

21  recognition of one faction or the other and only request prospective relief, they ignore the

22  potential effect of Plaintiff's request.  Plaintiff's sought-after relief – declaring the EHDs in

23  violation of the APA – would strip the 2011 Elected Council of its current recognition.  A

24  decision in Plaintiffs' favor thus would deprive an absent party, the 2011 Elected Council,

25  of its current interest in being the Tribe's sole governing body and holding those five

26  seats on the council.

27  ///

28  ///

1    Defendants also correctly conclude that finding for Plaintiffs in the 2011 Elected

2  Council's absence could interfere with the Tribe's government-to-government relations

3  with the United States.  Declaring the EHDs in violation of the APA would terminate the

4  United States's recognition of the 2011 Elected Council and invalidate the 2011 election,

5  leaving the Tribe without a recognized body through which to transact with the United

6  States.  That result would deprive the Tribe of any stability it might enjoy by having a

7  single recognized body through which to work with the United States on a government-

8  to-government basis and from having the ability to resolve membership and leadership

9  disputes on its own.

10    Therefore, the Court finds the Tribe and the 2011 Elected Council members are

11  necessary parties whose legally protected interests would be impaired by this action.

12    Makah illustrates this point.  In Makah, the Ninth Circuit found the district court

13  could grant prospective injunctive relief on a plaintiff tribe's procedural claims without the

14  presence of other tribes as long as that relief affected "only the future conduct of the

15  administrative process."  910 F.2d at 559.  However, with regard to the Secretary of

16  Commerce's past inter-tribal allocation decisions regarding the salmon harvest, the Ninth

17  Circuit found the absent tribes were necessary parties with legally protected interests.

18  Id.  While Plaintiffs in this action have dressed up the relief they seek in prospective

19  form, what they actually seek is to undo past decisions by the DOI.  This relief is far from

20  prospective.  As in Makah, Plaintiffs cannot challenge those decisions without the 2011

21  Elected Council and the Tribe being parties to this action.

22    Other cases are in accord.  See Timbisha Shoshone Tribe v. Bureau of Indian

23  Affairs, 2003 WL 25897083, at *5 (E.D. Cal. Apr. 10, 2003) (noting that "[a]t bottom, this

24  case is an internal dispute between two tribal factions."  The court found the dispute

25  "raise[d] questions about compliance with the Tribe's Constitution and Election

26  Ordinance, questions in which the Tribe as a whole has a clear interest."  The court

27  added "[t]he governance of the Tribe is at stake in this dispute, and the Tribe has an

28  interest in any such change in its governing body.

1    Accordingly, both the Tribe and the Kennedy Council are necessary parties."); see also

2    Chehalis, 928 F.2d at 1498 ("[T]he Quinault Nation undoubtedly has a legal interest in

3    the litigation.  Plaintiffs seek a complete rejection of the Quinault Nation's current status

4    as the exclusive governing authority of the reservation.  Even partial success by the

5    plaintiffs could subject both the Quinault Nation and the federal government to

6    substantial risk of multiple or inconsistent legal obligations. ").

7         Plaintiffs lastly allege that even if the Tribe and 2011 Elected Council have an

8    interest in this case, the DOI can adequately represent those legal interests in the Tribe

9    and 2011 Elected Council's absence.  Therefore, according to Plaintiffs, the Tribe and

10   the 2011 Elected Council members are not necessary parties.  (ECF No. 72 at 25.)

11        "In assessing an absent party's necessity under [Federal Rule of Civil Procedure]

12   19(a), the question whether that party is adequately represented parallels the question

13   whether a party's interests are so inadequately represented by existing parties as to

14   permit intervention of right under [Federal Rule of Civil Procedure] 24(a)."  Shermoen v.

15   United States, 982 F.2d 1312, 1318 (9th Cir. 1992).

16
         Consequently, [the Court] will consider three factors in determining whether
17       existing parties adequately represent the interests of the absent tribes:
         whether the interests of a present party to the suit are such that it will
         undoubtedly make all of the absent party's arguments; whether the party is
18       capable of and willing to make such arguments; and whether the absent
         party would offer any necessary element to the proceedings that the
19       present parties would neglect.

20   Id.  (emphasis added) (internal citations and quotations omitted).

21        Plaintiffs offer conclusory assertions that because only one tribe is involved in this

22   case, the United States can adequately represent the Tribe and 2011 Elected Council's

23   interests and that all three parties share the same goal of upholding the EHDs.

24   However, the United States already has stated that its interest lies in being able to

25   recognize some tribal government with which to work on a government-to-government

26   basis.  "[T]he leader of that governing body need not be Gholson or any other members

27   of the 2011 Tribal Council."  (ECF No. 55 at 11.)

28   ///

1   Meanwhile, the Tribe has an interest in ensuring that the proper council governs the

2   Tribe in compliance with its Constitution and ordinances.  Furthermore, the 2011 Elected

3   Council has an interest in maintaining its position as the Tribe's recognized governing

4   body.  Both the Tribe and the 2011 Elected Council will offer necessary and currently

5   unrepresented perspectives on tribal issues, that in their absence will likely be

6   neglected.  This Court still cannot say with any certainty that Defendants "will

7   undoubtedly make all of the absent [parties'] arguments" or that Defendants are even

8   capable of doing so.

9         Therefore, this Court once again concludes that Defendants cannot adequately

10  represent either the Tribe or the 2011 Elected Council.  Furthermore, adjudicating this

11  case without joinder of the Tribe and the 2011 Elected Council would impair or impede

12  the interests of the absent parties in this action.  Both the Tribe and the 2011 Elected

13  Council are thus necessary parties under Rule 19(a).

14              **3.       Whether the Tribe and the 2011 Elected Council are
                           Indispensable Parties**

15

16        As discussed in Section A, both the Tribe and the 2011 Elected Council enjoy

17  sovereign immunity in this case and cannot be joined as parties.  Because this Court

18  determined the Tribe and the 2011 Elected Council are necessary parties under Rule

19  19(a), the only remaining question is whether "in equity and good conscience, the action

20  should proceed among the existing parties or should be dismissed" because the Tribe

21  and the 2011 Elected Council are indispensable parties.  Fed. R. Civ. P. 19(b).

22        Pursuant to Rule 19(b), this Court will consider:

23      (1) The extent to which a judgment rendered in the person's  absence might
        prejudice that person or the existing parties;
24      (2) The extent to which any prejudice could be lessened or avoided by:
                (A) Protective provisions in the judgment,
25              (B) Shaping the relief, or
                (C) Other measures;
26      (3) Whether a judgment rendered in the person's absence would be
        adequate;
27
        (4) And whether the plaintiff would have an adequate remedy if the action
28

17

were dismissed for nonjoinder.

"Because both the Tribe and the [2011 Elected Council] have sovereign immunity, little balancing of these factors is required." Timbisha Shoshone, 2003 WL 25897083, at *6 (citing Kescoli v. Babbitt, 101 F.3d 1304, 1311 (9th Cir. 1996) ("If the necessary party is immune from suit, there may be very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor.") (internal citations and quotations omitted)).  When taken together, the factors nonetheless weigh in favor of this Court's conclusion that both the Tribe and the 2011 Elected Council are indispensable.

"The first factor in the Rule 19(b) analysis is essentially the same as the legal interest test in the 'necessary party' analysis." Timbisha Shoshone, 2003 WL 255897083, at *6 (citing Quileute Indian Tribe v. Babbitt, 18 F.3d 1456, 1460 (9th Cir. 1994)); see also American Greyhound, 305 F.3d at 1024-25 ("Not surprisingly, the first factor of prejudice, insofar as it focuses on the absent party, largely duplicates the consideration that made a party necessary under Rule 19(a).").  Therefore, for the reasons already stated above, the prejudice prong weighs in favor of an indispensability finding here.

In evaluating the next two prongs, the Court finds it cannot effectively minimize this prejudice or render an adequate judgment absent the presence of the necessary parties.  Granting any of Plaintiffs' requested relief would leave the Tribe with no recognized government, which, as this Court already stated, would be extremely detrimental to a sovereign entity just beginning to rebuild after years of unrest.  The Court finds there is no way to grant Plaintiffs' relief without divesting the 2011 Elected Council of its current position as the Tribe's recognized government.

Plaintiffs contend that this Court can craft relief to avoid prejudice to the Tribe or the 2011 Elected Council because this Court is not required to vacate an agency decision and instead can remand to the appropriate agency, here the DOI, for further proceedings.  (ECF No. 72 at 26.)

1    Plaintiffs cite to a number of cases involving environmental law in which courts

2    remanded agency regulations they found violated the APA; however, the courts vacated

3    those regulations in order to protect a species or preserve the operation of an

4    environmental act.  See Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1405 (9th

5    Cir. 1995) ("Ordinarily when a regulation is not promulgated in compliance with the APA,

6    the regulation is invalid.  However, when equity demands, the regulation can be left in

7    place while the agency follows the necessary procedures.") (internal citations omitted);

8    Cal. Communities Against Toxics v. EPA, 688 F.3d 989 (9th Cir. 2012) (opting not to

9    vacate an EPA decision after the EPA admitted its reasoning was flawed and requested

10   remand to reconsider its action); W. Oil and Gas Ass'n v. EPA, 633 F.2d 803 (9th Cir.

11   1980).  However, these cases, which deal with endangered species and environmental

12   acts, are factually distinguishable on their face.  Plaintiffs cite to no cases in which a

13   court has extended its equitable power of remand absent vacatur from environmental

14   issues to those on a more comparable footing to tribal law.

15        Nevertheless, Plaintiffs maintain that the Court's equitable power "includes

16   adjudications as well as rulemakings" and that the remand they request is therefore

17   proper.  (ECF No. 72 at 26.)  They cite to Checkosky v. SEC, 23 F.3d 452 (D.C. Cir.

18   1994), and United Mine Workers of America v. Federal Mine Safety & Health

19   Administration, 920 F.2d 960, 966-67 (D.C. Cir. 1990), to support their position.

20   However, both of those cases dealt with agency decisions that included "an inadequate

21   statement . . . of findings and conclusions," Checkosky, 23 F.3d at 462, and "a want of

22   reasoned decisionmaking."  United Mine Workers, 920 F.2d at 966.  In both cases, the

23   D.C. Circuit remanded the cases without vacatur not because the agencies clearly

24   violated the APA, but, rather, "to afford the agency an opportunity to set forth its view in

25   a manner that would permit reasoned judicial review," Checkosky, 23 F.3d at 462, and

26   because of "some possibility that substantial evidence may be missing on some points,"

27   United Mine Workers, 920 F.2d at 966.

28   ///

1  In United Mine Workers, the D.C. Circuit concluded that because "the record affords us

2  no basis for concluding that the deficiencies of the order will prove substantively fatal, we

3  remand the case but do not vacate." Id.  The D.C. Circuit declined to vacate the agency

4  decisions because the court did not have enough information to conclude the agency

5  decisionmaking warranted vacating.

6        This Court finds no such lack of reasoning or paucity of evidence in the EHDs and

7  no reason to extend the doctrine to this case.  Therefore, factors two and three favor

8  dismissal.  The fourth prong likewise favors dismissal.  Even though there remains no

9  alternative forum available to Plaintiffs at this point, which would seem to weigh in

10  Plaintiffs' favor here, the Ninth Circuit has recognized that "a plaintiff's interest in

11  litigating a claim may be outweighed by a tribe's interest in maintaining its sovereign

12  immunity." Kescoli, 101 F.3d at 1311 (quoting Chehalis, 928 F.2d at 1500); see also

13  Am. Greyhound, 305 F.3d at 1025 ("[W]e have regularly held that the tribal interest in

14  immunity overcomes the lack of an alternative remedy or forum for the plaintiffs.").

15  Indeed, the Tribe's sovereign immunity in this case presents a compelling factor favoring

16  dismissal.  See Kescoli, 101 F.3d at 1311.  Accordingly, when evaluating the facts and

17  circumstances of this case as a whole, the Court finds that equity and good conscience

18  demand dismissal of this action.

19

20        **C.    Leave to Amend**

21

22        A court granting a motion to dismiss a complaint must then decide whether to

23  grant leave to amend.  Leave to amend should be "freely given" where there is no

24  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

25  to the opposing party by virtue of allowance of the amendment, [or] futility of the

26  amendment . . . ."

27  ///

28  ///

20

1   Foman v. Davis, 371 U.S. 178, 182 (1962); see also Eminence Capital, LLC v. Aspeon,

2   Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be

3   considered when deciding whether to grant leave to amend).  Dismissal without leave to

4   amend is proper only if it is clear that "the complaint could not be saved by any

5   amendment."  Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir.

6   2007) (internal citations and quotations omitted).

7            As discussed above, the Tribe and the 2011 Elected Council members are

8   indispensable parties that enjoy sovereign immunity.  They cannot be joined to this

9   action unless they agree or expressly waive their immunity.  At this point, neither the

10  Tribe, through the 2011 Elected Council, nor the individual members of the council

11  waived their immunity.  The Court already accorded Plaintiffs leave to amend their

12  complaint, and the SAC fares no better than its predecessors in avoiding dismissal.

13  Consequently, this Court sees no way Plaintiffs can cure their complaint through any

14  further amendment.  Therefore, this Court GRANTS Defendants' Motion to Dismiss

15  without leave to amend.

16

17                                      **CONCLUSION**

18

19           For the reasons just stated, Defendants' Motion to Dismiss, (ECF No. 64), is

20  GRANTED without leave to amend.

21           IT IS SO ORDERED.

22  DATED:  April 8, 2013

23

24

25                                      _____

26                                      MORRISON C. ENGLAND, JR., CHIEF JUDGE
                                        UNITED STATES DISTRICT JUDGE

27

28